THE TRUMBULL ELECTRIC MANUFACTURING COMPANY *v.* THE JOHN COOKE COMPANY.

MALTBIE, C. J., BROWN, ELLS and DALY, Js.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued February 2—decided March 26, 1943.

*Milton M. Koskoff* and *Joseph F. Berry,* for the appellant (plaintiff).

*William N. DeRosier,* for the appellee (defendant).

ELLS, J. Two sewers are involved in the facts of this case. One was built in 1906 in pursuance of a written agreement made by the plaintiff, John Cooke and G. C. Woodford for the "proper draining" of their lands. The parties agreed to pay the cost in certain proportionate shares and to bear equally the expense of future repairs. The plaintiff's factory and Woodford's own house were connected with the sewer. It emptied into a brook. Apparently it was used also for sanitary sewage, for in 1917 the state department of health notified the plaintiff that it would have to discontinue disposing of sanitary sewage by this method. Cooke and Woodford knew of this order. On

November 10, 1917, they conveyed sewer rights of way over their lands to the plaintiff for the consideration of "one or more dollars." The deeds did not contain any provisions or reservations giving the grantors the right to use the proposed sewer. On the same day the three parties entered into a written agreement which referred to the 1906 contract and stated that that agreement was cancelled and that the new agreement was substituted therefor. It then provided that the title to "said sewer and sewer rights and pipes" was vested in the plaintiff, that Woodford and Cooke were "relieved" from obligation to contribute to the maintenance and cost of "said sewer" and that they were permitted "to connect with said sewer any dwelling house or dwelling houses located on their respective lands hereinafter described and to discharge into said sewer the house drainage from such houses." The only existing sewer was the 1906 one, the use of which was not objected to by the state department of health for purposes other than the disposal of sanitary sewage. It is still used by the plaintiff for drainage not detrimental to public health.

In 1918 and 1919 a new sewer was constructed by the plaintiff at its own expense within the limits of the rights conveyed by Cooke and Woodford. It cost more than $20,000, possibly $40,000. Sewer beds and septic tanks were constructed on lands purchased from Cooke. The sewer consisted of two lines, one for factory waste and sanitary sewage, and the other for oil and acid. The pipes were of vitrified tile and there were no Ys for connections along the line. It is difficult to cut into vitrified tile and to make connections therewith. At the time the sanitary sewer was constructed, one connection was made from Woodford's house. The only other connections were from the plaintiff's factory. The defendant is the successor in title to John

Cooke and has laid out its lands into building lots. It has sold a total of nine lots facing the new sewer line. Houses have been built and have been connected, since 1935, with the sewer. The defendant claimed an absolute right to connect houses to be built in the future, and the plaintiff sought a judgment declaring that the new sewer is its own exclusive property and that the defendant has no right to connect with it. Upon the facts found, including the foregoing, the trial court decided that the new sewer was a substitute for the old one and was intended to be used by all the parties to the 1906 and the 1917 agreements, and that the defendant under the latter agreement has a right to connect with the new sewer. The plaintiff has appealed. The corrections in the finding sought by the plaintiff are not material, as we view the case.

The issue turns on the construction to be given the 1917 agreement, especially the meaning of the words "said sewer." "Said" means "before-mentioned; already spoken of." Webster's New International Dictionary (2d Ed.). The only sewer to which the agreement had previously referred was the 1906 one. The first use of the words "said sewer" could only have been intended to apply to the 1906 sewer. "Language reasonably appropriate and sufficient to express an intent must be found before that intent can be given effect. The aim of interpretation is to ascertain what a writer intended by what he said, and not either to put words into his mouth or to give effect to that which it may be thought that he either intended to say or would have wished to say but didn't. Between it and reformation a wide gulf is fixed. With unexpressed intent interpretation has no concern, and it is no part of its office to add to or alter agreements made." *Ziulkoski* v. *Barker,* 94 Conn. 491, 494, 109 Atl. 185; *Boucher* v. *Godfrey,* 119 Conn. 622, 629, 178 Atl. 655; *Ives* v.

*Willimantic,* 121 Conn. 408, 411, 185 Atl. 427. Language must be given its ordinary meaning unless a technical or special meaning is clearly intended. *Wood* v. *Employers' Liability Assurance Corporation,* 41 Fed. (2d) 573, 575; *Perkins* v. *Eagle Lock Co.,* 118 Conn. 658, 663, 174 Atl. 77. "Words are to be construed according to their strict and primary acceptation, unless from the context of the instrument, and the intention of the parties to be collected from it, they appear to be used in a different sense, or unless, in their strict sense, they are incapable of being carried into effect." *Pollock, C. B.,* in *Mallan* v. *May,* 13 M. & W. 511, 517, 153 Eng. Rep. R. 213. Where the words of an agreement have a definite meaning in common usage and the intent expressed in them is capable of a precise and sensible application to the subject matter of the contract, they must be given that meaning. 3 Williston, Contracts (Rev. Ed.), § 611. It is true that Wigmore (9 Evidence [3d Ed.] § 2461 et seq.) contends for a somewhat broader rule, as applied generally to the construction of written documents, but he admits (p. 201) that "In *deeds* and *contracts,* the traditional rule finds constant and dominant application in excluding the mutual standard, *i. e.,* the agreement of the *parties themselves* upon a special sense for their words." The words of the agreement before us, giving to them their ordinary meaning, are clear and definite, and they are capable of precise application to the subject matter of the contract. To read the agreement as applying to the sewer constructed by the plaintiff after the contract was made would be to give effect, not to the intention expressed in it, but to the conclusion of the court as to the intention it believed the parties had as indicated by extraneous facts. *Adams* v. *Turner,* 73 Conn. 38, 45, 46 Atl. 247.

The trial court read together the deeds executed on

November 10, 1917, and the agreement of that date, and concluded that the words "said sewer" used in the agreement, although they referred to the 1906 sewer, included also the proposed sewer for which rights of way were given in the deeds. Even if they are read together, they do not support the court's conclusion. Furthermore, the deeds did not state that they were given in consideration of the release of the 1906 agreement but, on the other hand, recited that the consideration was "one or more dollars."

The next claim is that the plaintiff by letter acknowledged that the defendant had a right to connect with the new sewer, and that the interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court. *New Haven Water Co.* v. *New Haven,* 106 Conn. 562, 580, 139 Atl. 99. Assuming but not agreeing that the letter may be so construed, the fact remains that the rule is merely a secondary rule of interpretation. If the meaning of the contract is plain, the acts of the parties cannot prove an interpretation contrary to the plain meaning. *Adams* v. *Turner,* supra, 42, 45; 3 Williston, Contracts (Rev. Ed.), § 623.

The defendant makes the further claim that there was an abandonment of the old sewer and a substitution of the new one for it. The trial court did in effect so conclude. The plaintiff attacked the conclusion. The finding does not support it, nor can it be supported by any reasonable inference drawn from the evidence. The old sewer has never been abandoned. It has never been changed. It is still usable for the purpose of the draining of lands. In the words of the finding: ". . . it is still usable for surface water and any other drainage not dangerous to public health. The plaintiff makes such use of it." *Nichols* v. *Peck,*

70 Conn. 439, 442, 39 Atl. 803; *Stueck* v. *Murphy*, 107 Conn. 656, 662, 142 Atl. 301.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiff.

In this opinion the other judges concurred.