CHASE BRASS AND COPPER COMPANY, INC. *v.* CHASE
BRASS AND COPPER WORKERS UNION LOCAL 1565

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued February 5—decided March 24, 1953

*William J. Secor, Jr.*, with whom was *Kenyon W. Greene*, for the appellant (plaintiff).

*Chester T. Corse*, with whom was *Thomas R. Robinson*, for the appellee (defendant).

JENNINGS, J. The parties are in dispute over the interpretation and application of a clause in a labor relations contract. The matter was referred to an arbitrator. The question to be decided in this application to vacate his award under General Statutes, § 8161, is whether he exceeded his powers or imperfectly executed them. The allegations of fact in the application, with one exception, are admitted in the answer. The issue is essentially one of law. The finding is not subject to correction as to facts as distinguished from conclusions. A full presentation of the theory and facts underlying this controversy would require several pages of this opinion, as it did of the record on appeal. An attempt will be made to present the bare essentials necessary to a decision, as they appear in the finding.

The plaintiff company and defendant union are parties to a labor relations contract. This provides for the arbitration of disputes and reads in part as follows: "Article XXIV . . . 5. The arbitrator may interpret this Contract and apply it to the particular case submitted to him, but he shall, however, have no power to add to, subtract from, or in any way modify the terms of this Contract. . . . 7. The parties agree to accept the arbitrator's award as final and binding, providing it is not contrary to law." On October 18, 1950, the company received a grievance from the union which read: "The Union claims that the Company has violated Article X, Section H(3) of the contract on the No. 72 slitter. . . ." When the grievance procedure failed, the parties selected an arbitrator and submitted the grievance to him in the following form, under the rules of the American Arbitration Association: "Did the Company violate Article X, Section H(3) of the contract on the No. 72 slitter on October 18, 1950?" The article

reads: "Article X—Incentive System at the Chase Metal Works Plant . . . Sec. H. Under the following circumstances the Company will pay to the employee involved his average straight-time hourly earnings: . . . 3. On bonus jobs where no new Standards have been set and old Standards do not apply." The arbitrator's award, as corrected by the trial court, reads: "On the No. 72 slitter, on October 18, 1950, the Company violated Article X, Section H(3) of the contract by not paying the inspector average earnings." The arbitrator also wrote a memorandum of decision, although he was not required to do so. This contained the only reasons given by him for his award.

The operation on the No. 72 slitter was a bonus job. This meant that the company would pay a bonus in addition to base pay for all production over a predetermined amount. In ascertaining this amount, the company first determined the method to be used, that is, the equipment, its speed, size of the crew, etc. The production obtainable from this equipment and method was then estimated by using as a measure the amount which a mythical, average qualified operative, working at normal pace and fully utilizing his time, would be able to produce. This standard was obtained by "time study" and represented the minimum amount of work a man must do before he could earn more than his base pay. Specific qualifications of any individual are never built into standards.

The operation on the No. 72 slitter required a crew of three. On October 18, 1950, one of the crew failed to appear. After a short delay a substitute, not familiar with the operation, was furnished by the company. While he was working the team failed to exceed standard production. One of the team,

the inspector, did not, for the period in question, receive average earnings, that is, the current base rate plus the average bonus per hour earned during the preceding calendar quarter. The practical effect of the arbitration award was to give average earnings to all three operatives. While the difference between average earnings and base pay was only 53 cents for the period, the company claims that the adoption of the principle established by the award would be "revolutionary in the field of Industrial Engineering and Labor Relations."

On these facts, the trial court came to forty-seven conclusions, one of which was that the arbitrator's award and memorandum did not disclose any mistake of law or fact. The plaintiff claims that the standard was not rendered inapplicable by the introduction of an inexperienced operative into the crew because the qualification of employees is not a condition of the standard. It would follow that the standard would apply and that only base pay was due since no bonus was earned. The defendant claims that the introduction of the inexperienced operative so changed the conditions of operation as to make the standard inapplicable. If this was so, Article X, § H(3), in terms required the payment of average earnings.

The basic test of the validity of the award lies in its conformity to the submission. *Goff* v. *Goff*, 78 W. Va. 423, 428, 89 S.E. 9. The trial court concluded, in effect, that the arbitrator was not bound by rules of law in coming to his conclusion, and that, had he been, his decision could still be sustained.

The essential terms of the agreement of arbitration have been quoted above. The arbitrator is given the power to interpret and apply the contract, and "[t]he parties agree to accept the arbitrator's

award as final and binding, providing it is not contrary to law." If the parties enter into an unrestricted submission, arbitrators are not required to decide according to law. Sturges, Commercial Arbitrations & Awards, p. 500. If the arbitrators are required by the agreement to decide according to law, the cases are in conflict. Id., pp. 502, 793-796. *Acme Cut Stone Co.* v. *New Center Development Corporation,* 281 Mich. 32, 49, 274 N.W. 700, holds that they are bound by the rules of law. See also note, 112 A.L.R. 873, 886. On the other hand, an award has been held to be beyond the reach of the courts although the submission was "to determine all questions according to the rules of law and equity, the same as though the matter was to be tried in a court of law or equity." *Mickles* v. *Thayer,* 14 Allen (96 Mass.) 114, 119; see also *Bigelow* v. *Newell,* 10 Pick. (27 Mass) 348; *Underhill* v. *Van Cortlandt,* 2 Johns. Ch. 339. There is no question that the courts will go far to sustain an award. It does not follow that they are at liberty to shirk the processes of construction just because they think arbitration desirable. *Matter of Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N.Y. 284, 297, 169 N.E. 386.

Construction of the contract for arbitration was for the court. *Straus* v. *Kazemekas,* 100 Conn. 581, 588, 124 A. 234; *Kibbe* v. *Woodruff,* 94 Conn. 443, 445, 109 A. 169. "Courts of law must allow parties to make their own contracts, and can enforce only such as they actually make. Whether the contract is wise or unwise, reasonable or unreasonable, is ordinarily an immaterial inquiry." *Zaleski* v. *Clark,* 44 Conn. 218, 223; *Lakitsch* v. *Brand,* 99 Conn. 388, 393, 121 A. 865. In the case at bar, it was open to the parties to make an unrestricted or a restricted submission. "Arbitrators . . . are not bound to follow

strict rules of law, unless it be made a condition of the submission. . . ." *Liggett* v. *Torrington Building Co.,* 114 Conn. 425, 432, 158 A. 917. The parties elected to provide that the award should be final when—and, presumably, only when—it was not contrary to law. Every provision in a contract should be given effect. *Byram Lumber & Supply Co.* v. *Page,* 109 Conn. 256, 264, 146 A. 293. "[P]roviding it is not contrary to law" imposes a more severe stricture on the conduct of the arbitrator than would the affirmative phrase that he must decide according to law. The parties must abide by their election.

Although the provisions of the contract relating to arbitration endow the arbitrator with the power to interpret the other terms of the contract which are applicable to the facts of the dispute submitted to him, they also require, as just pointed out, that his award comply with the law. The interpretation of those terms is a matter of law. If the arbitrator has clearly misinterpreted the terms of the contract which he has applied to the facts to reach his award, then his award is contrary to law. The question before us is, therefore, whether the interpretation which the arbitrator must necessarily have placed on article X, § H(3), of the contract to make his award is tenable.

The parties are apparently agreed that changes in the setup of a job would make old standards inapplicable. Examples of such changes would be the reduction of the crew from three to two or the slowing of the machine by 50 per cent. The introduction of an inexperienced operative into the team is not such a change. Once it is admitted that the standard is based on the output of a mythical average qualified operative, the actual performance of one of a crew of three does not change the standard, however

much the actual output may differ therefrom. In illustrating this principle, one of the witnesses used par on a golf course. If par is 72, it remains 72 whether a highly skilled golfer goes around in 70 or a duffer takes 100. The standard remains until there is some change in conditions, such as the lengthening or the shortening of a hole. So, in the case at bar, as long as the conditions of employment are the same, the standard remains the same regardless of the skill or inexperience of an operative. The construction placed on the contract by the arbitrator was contrary to law.

The plaintiff claims that the judgment is erroneous for another reason. Article X, § H, recites four cases in which average earnings, that is, including bonus, will be paid, only one of which, (3), had any application to the case at bar. The plaintiff claims that for the arbitrator to hold that a bonus should be paid when an inexperienced operative is added to the crew is to add a fifth condition to this section of the contract and that the arbitrator cannot do this. The contract specifically provides that the arbitrator may not add to the contract. The plaintiff's point is well taken. See *Matter of Western Union Telegraph Co. (American Communications Assn.)*, 299 N.Y. 177, 184, 86 N.E.2d 162.

There are additional practical reasons why the award should not stand. Since the defendant claims that variation from the output of the mythical average qualified operative rendered the standard inapplicable, it could rarely apply because there is no such person. This is a result which the parties could hardly have contemplated. The memorandum of the arbitrator is irrelevant; *In re Curtis-Castle Arbitration,* 64 Conn. 501, 513, 30 A. 769; Sturges, Commercial Arbitrations & Awards, p. 797; but he did

say, "Theoretically, management is taking a sound position." The application to vacate the award should have been granted on the ground that the arbitrator exceeded his powers.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to vacate the award.

In this opinion the other judges concurred.