AMALGAMATED ASSOCIATION OF STREET ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, A.F.L. *v.* THE CONNECTICUT COMPANY

INGLIS, C. J., BALDWIN, DALY, ALCORN and COMLEY, Js.

Argued February 7—decided March 7, 1955

*Jeremiah D. Shea,* with whom was *Isadore J. Gromfine,* of the District of Columbia bar, for the appellant (plaintiff).

*Thomas J. O'Sullivan,* for the appellee (defendant).

INGLIS, C. J. In this case the plaintiff made application to the court for a judgment vacating an award of arbitrators. The trial court rendered judgment for the defendant, and the plaintiff has

appealed. The principal question on this appeal is whether the resignation of one of three arbitrators, after the completion of the hearings and after a full discussion among all the arbitrators, but before a final award was signed, prevented the remaining two arbitrators from deciding the issues involved and rendering a valid award.

The finding of subordinate facts, concerning which the plaintiff raises no question, may be summarized as follows: On March 4, 1953, the plaintiff, hereinafter referred to as the union, and the defendant, hereinafter referred to as the company, entered into a written agreement to arbitrate certain differences. The union was the bargaining agent of various employees of the company. The agreement recited that the company and the union had failed to agree upon certain additions and amendments to, and changes in, the contract dated November 7, 1951, to apply to hourly rated employees of the company during the contract year commencing October 1, 1952. The agreement set forth in detail ten demands of the union which had not been agreed to by the company and ten demands of the company which had not been agreed to by the union. The parties agreed that all of these differences "are hereby referred for hearing and decision to a three man board, one member being chosen by the Union and one by the Company, who shall confer daily to select a third arbitrator who shall act as Chairman of the Board of Arbitration, in accordance with said contract between the parties." The contract further provided: "If one of the arbitrators named by the parties hereto dies, resigns, or for any reason is unable to act, the party appointing him shall name his successor within three days. Both parties have the right of substitution of their respective arbitra-

tors at any time without in any way affecting the proceedings."

In accordance with the provisions of the agreement, David E. FitzGerald, Jr., was appointed as the union's arbitrator, Harry L. Filer was named as the company's arbitrator, and Paul W. Bruton was selected as the third arbitrator and chairman of the board. The three arbitrators met and heard the evidence presented by the parties on August 10, 11, 12, 13 and 17, 1953, and concluded the taking of evidence and the hearing of arguments at about 5 o'clock in the afternoon of August 18. During the morning of August 19, the arbitrators individually examined the evidence in preparation for a conference. They met on the afternoon of August 19 and all day on August 20. By the conclusion of their session on August 20, they had discussed all the issues involved in the arbitration. At that time Bruton thought that the terms of the award had crystalized to the point where a tentative award in draft form should be written, although neither FitzGerald nor Filer were then in full accord with Bruton's views. During the evening of August 20, Bruton prepared a tentative draft of an award and presented it to the other two arbitrators at a conference on the morning of August 21. At that conference there was further discussion of the issues before the board.

Shortly before noon on August 21, FitzGerald told the other arbitrators that he was withdrawing from the board and left the meeting. He went to his office and wrote a letter, which was delivered to Bruton at about 3 o'clock in the afternoon of the same day, in which he stated that he was "confirming the fact that I withdraw as a member of the Board and my withdrawal was due to the reasons

set forth to you and Mr. Filer." Bruton and Filer finished going over the draft award, and both signed the award at about 3:30 p.m. on August 21. A copy of it was delivered to FitzGerald's office later in the afternoon. At the time of FitzGerald's withdrawal, the board had not concluded their executive sessions and had not decided some of the issues. The only item which the finding specifically shows had been urged by FitzGerald but had not been agreed upon by the other arbitrators before he withdrew was the demand that the company pay all the cost of off-the-job insurance. FitzGerald's suggestion in that respect was incorporated in the award as finally made.

On the foregoing facts, the court decided that in spite of FitzGerald's withdrawal the award made by the majority of the arbitrators was reached by proper means and was valid. The court reached the conclusion, among others, that there was no adequate reason to cause FitzGerald to withdraw. The plaintiff assigns this conclusion as error. It concedes in its brief, however, that the conclusion is incidental and argues that it injects an irrelevant consideration into the case. We take the same view of the matter. Whether or not FitzGerald's reasons were adequate is not decisive of this case as it has been presented to us. Accordingly, we do not need to discuss this assignment of error.

Section 8161 of the General Statutes provides that an award of arbitrators may be vacated if it was "procured by corruption, fraud or undue means." The essence of the union's claim is that the award in the present case was procured by undue means in that it was decided upon by only two of the arbitrators after the resignation of the arbitrator appointed by the union and before the expira-

tion of the three-day period within which, it is claimed, the union had the right, under the contract, to appoint a successor.

It is fundamental that an agreement for the submission of an issue or issues to arbitrators constitutes the charter of the entire arbitration proceedings. *Niles-Bement-Pond Co.* v. *Amalgamated Local 405*, 140 Conn. 32, 36, 97 A.2d 898. Such an agreement defines and limits the issues to be decided by the arbitrators. *International Brotherhood of Teamsters* v. *Shapiro*, 138 Conn. 57, 68, 82 A.2d 345. If it specifies methods of procedure for the arbitration, the arbitrators will be bound to that procedure unless it is in violation of law or public policy. *American Brass Co.* v. *Torrington Brass Workers' Union*, 141 Conn. 514, 521, 107 A.2d 255; *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union*, 139 Conn. 591, 595, 96 A.2d 209. Accordingly, the question decisive of this case is whether the arbitration agreement between the parties is to be interpreted as requiring the arbitrators to wait for three days after FitzGerald resigned to give opportunity to the union to appoint a successor arbitrator.

The agreement reads that substitution of arbitrators may be made at "any time." As will be pointed out presently, when read in connection with the contract as a whole, the quoted phrase cannot mean literally any time without limitation. Consequently, the entire provision of the agreement which bears upon the question which we have just said is decisive of the case is sufficiently uncertain to call for interpretation.

At the outset it should be noted that if the contract is to be interpreted in such a way as to require that all three arbitrators continue until a final award is completed and that, in the event one arbitrator

drops out, a substitute be appointed in order to complete a valid award, it would be possible for either party, by appointing a partisan arbitrator, to make sure that the award would be in its favor or that no award would eventuate. That is to say, the partisan arbitrator, after hearing the discussion, would become aware of the decision which was going to be made by a majority of the board and if this was adverse to his party would resign. His party could then appoint as his successor an arbitrator who was equally partisan and who, in turn, would resign. This routine could be carried on forever, thus effectually preventing a final award. Such tactics would completely nullify the purposes of the entire arbitration agreement. That the parties intended that their arbitration agreement would be susceptible of an interpretation which would produce such a result is hardly conceivable.

In interpreting any contract we must seek the intent of the parties expressed therein. In the ascertainment of that intent, "all of the circumstances surrounding the making of the contract must be taken into consideration; . . . and the motives of the parties and the ends which they sought to accomplish by their contract are relevant." *Colonial Discount Co.* v. *Avon Motors, Inc.*, 137 Conn. 196, 200, 75 A.2d 507. Accordingly, a proper interpretation of the clause in the arbitration agreement which provides for the appointment of successor arbitrators requires an understanding of the purpose which the parties sought to accomplish by its inclusion. Obviously, this purpose was to avoid the necessity of a rehearing or even the termination of the arbitration without an award, a result which would follow, either under the statute or at common law, from the death, resignation or inability to act of any of

the appointed arbitrators. General Statutes § 8157; 6 C.J.S. 178, § 34 (d); Sturges, Commercial Arbitrations & Awards, § 205. Accordingly, it must be concluded that the intent of the parties expressed in the provision for substitution was that the provision would not apply at a time when the appointment of a substitute arbitrator was no longer necessary to save the arbitration. The case, therefore, turns on the question whether, at the time Fitz-Gerald withdrew, it was necessary to appoint a successor arbitrator in order to permit a valid award. If an appointment was not necessary, obviously the contract did not require that the union be given an opportunity to appoint a successor.

The great weight of authority is to the effect that where an arbitration agreement provides that the decision of the issues may be by a majority of a board of arbitrators, and also provides for the appointment of successor arbitrators, it is not necessary to appoint a successor arbitrator in case a vacancy occurs after all the arbitrators have heard the evidence and the claims of the parties and have had an opportunity to discuss the issues among themselves. When the vacancy occurs at that time, the remaining arbitrators may proceed to make an award if a majority of the original board can agree to the award. *Matter of American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.*, 240 N.Y. 398, 407, 148 N.E. 562; *Atchison, T. & S. F. Ry. Co.* v. *Brotherhood of Locomotive Firemen & Enginemen*, 26 F.2d 413, 417; *Carpenter* v. *Wood*, 1 Metc. (42 Mass.) 409, 411; *Pittsburgh Union Stock Yards Co.* v. *Pittsburgh Joint Stock Co.*, 309 Pa. 314, 320, 163 A. 668; *Grand Rapids & I. Ry. Co.* v. *Jaqua*, 66 Ind. App. 113, 125, 115 N.E. 73; Sturges, Commercial Arbitrations & Awards, p. 427.

The leading case of *Matter of American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.*, supra, is on all fours with the present case. The arbitration agreement named two of the three arbitrators, and the third was later appointed by written agreement between the parties. It was provided that, in the event of the resignation or inability to act of an arbitrator named in the arbitration agreement, the party which had designated him should appoint a substitute. The issues were to be decided by a majority of the board. After a full hearing of the evidence and claims of the parties and some discussion among the arbitrators, the arbitrator appointed by one of the parties resigned. The other two made an award, and it was held that the award was valid. The court said (p. 408): "All the arbitrators should be notified to meet for deliberation so that opportunity for full consultation is furnished but it is not the rule that one may then by wilful absence,—and resignation at this stage is no less than wilful absence,—prevent an award by a majority. All should meet and hear the proofs but the report of two is valid unless the third has been excluded from participation in their deliberations without fault on his part. The refusal of the third arbitrator to attend after final submission ceases to be material when its effect would be to juggle one of the parties out of the benefit of the arbitration. (*Carpenter* v. *Wood*, 42 Mass. 409.) If an arbitrator may resign at the last moment, if concert of action in reaching a decision as distinguished from the award itself is necessary, no award could be reached in any case if at the eleventh hour one of the three found himself in the minority and sought to serve his own interests or those of the party naming him by resigning. The law does not contemplate that the edifice thus elaborately raised

should be toppled over by such an untimely explosion from within. The salutary purpose of an arbitration is the summary and extrajudicial settlement of controversies between parties. The court should pause before permitting a technical and strained construction of the law or the agreement of the parties to defeat that purpose. If the law or the parties contemplate the possibility of an endless chain of frustrated arbitrations or the summary termination of the submission when the pen is in the hand of two of the arbitrators to sign an award, the meaning should be unmistakably expressed. It is highly improbable that any arbitration agreement or submission to arbitration would be made if it would involve the parties in such absurd consequences. Laws should be construed sensibly and plain purposes should not be defeated by narrow interpretations. It follows that the withdrawal of one of the arbitrators on the threshold of a formal award does not end the authority of the other two unless the terms of the arbitration submission take the case out of the general rule governing majority awards. . . . Literally, the agreement provides that if an arbitrator ceases to act a substitute arbitrator should be chosen. But the substitute clause need not be read so crabbedly as to permit an unreasonable result in flat contradiction of the common and statute law. The letter should be enlarged within legitimate bounds, rather than limited, when the end in view may thereby be more effectually accomplished. Under a fair and equitable interpretation of the submission agreement, a vacancy caused by the withdrawal of an arbitrator need not be filled after the case has been heard, considered and practically decided. The withdrawal at that point does not prejudice the rights of the parties to a hearing be-

fore a full board and an award by a majority or make necessary a rehearing of all the allegations and proofs of the parties before a substitute arbitrator."

On the same day that the New York Court of Appeals decided the *American Eagle Fire Ins. Co.* case, supra, it also decided *Matter of Bullard* v. *Morgan H. Grace Co.*, 240 N.Y. 388, 148 N.E. 559. In that case it was held that the withdrawal of one of three arbitrators before all the evidence was heard prevented the other two from rendering an award. A comparison of these two cases makes clear that the line must be drawn at the time when all of the evidence has been heard and the arbitrators have had an opportunity to discuss the issues among themselves. If an arbitrator resigns before that time, the arbitration may not proceed to an award. But if he resigns after that time, the majority of the board may proceed to a decision of the matter and the appointment of a substitute arbitrator is not necessary. When a group has, as a unit, heard all the evidence and has had the advantage of the interchange of arguments and opinions among all its members, a decision arrived at thereafter by a majority of the group is a decision by the group rather than a decision by the individual members of the group. Accordingly, when a board of arbitrators has sat together to hear evidence and has conferred at substantial length concerning the decision of the matter in dispute, a decision then arrived at by a majority of the board is the decision of the board.

In the present case, at the time FitzGerald resigned, the arbitratrors had completed hearings which had occupied six days. They had individually examined the evidence preparatory to their executive session. They had met twice in executive ses-

sion and had discussed all of the issues before the board. They had met again in executive session to consider a tentative draft of a proposed award. So far as the finding discloses, FitzGerald was only in disagreement because the other two arbitrators had not yet agreed to his request that the company pay all the cost of off-the-job insurance. FitzGerald's suggestion in that respect was incorporated in the award. His withdrawal came actually not more than four hours before the award was completed and signed by a majority of the arbitrators. Furthermore, it does not appear that there was any substantial change made in the award after FitzGerald withdrew. We therefore conclude that the provisions of the arbitration agreement relating to the substitution of arbitrators did not apply to require a substitute for FitzGerald at the time he resigned, that it was proper under the agreement, which permitted a majority award, for the remaining arbitrators to proceed to a decision of the matters referred to them for arbitration without waiting for the union to appoint a successor arbitrator and that, consequently, the trial court was correct in its conclusion that the award was valid and should not be vacated.

There is no error.

In this opinion BALDWIN and COMLEY, Js. concurred.

DALY, J. (dissenting). I am unable to agree with the majority of the court in their conclusions. In my opinion, there is no ambiguity in the language used in either paragraph 1 or paragraph 2 of the arbitration agreement. In the first of these it is provided: "All of the differences existing between the parties . . . are hereby referred for hearing

and decision to a three man board . . . ." In the second it is provided: "If one of the arbitrators named by the parties hereto dies, resigns, or for any reason is unable to act, the party appointing him shall name his successor within three days. Both parties have the right of substitution of their respective arbitrators at any time without in any way affecting the proceedings." The majority opinion rests upon the proposition that the words "at any time" are ambiguous. The differences between the parties were referred "for hearing and decision to a three man board." The existence of the board, according to the agreement of the parties, continued from the time of the selection of the third arbitrator until the time of the decision. Consequently, since the words "at any time," when given their ordinary meaning, are clear and definite, they are capable of precise application to the determination of the time when a party shall name a substitute arbitrator. *Trumbull Electric Mfg. Co.* v. *John Cooke Co.,* 130 Conn. 12, 16, 31 A.2d 393.

The words "at any time" permitted the party naming the substitute arbitrator to do so within the three-day period, at any stage of the proceedings before a decision was made. To read the agreement otherwise would be to give effect, not to the intention clearly and definitely expressed in it, but to the conclusion reached by a majority of the court as to the intention they believed the parties had. Courts of law must allow parties to make their own contracts, and they can enforce only such contracts as the parties actually make. When a written contract is clear and unequivocal, as is the one in this case, its meaning must be determined by its contents alone. A meaning cannot be given to it other than that expressed, whether it is wise or

unwise, reasonable or unreasonable. The court cannot read into the contract words it does not contain. *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595, 96 A.2d 209; *Lakitsch* v. *Brand,* 99 Conn. 388, 393, 121 A. 865; *Zaleski* v. *Clark,* 44 Conn. 218, 223. "Where a contract makes provision for a certain contingency, it is not for a court to import into the contract some other and different provision for the same contingency." *Straus* v. *Kazemekas,* 100 Conn. 581, 593, 124 A. 234; *Whitaker* v. *Cannon Mills Co.,* 132 Conn. 434, 440, 45 A.2d 120.

In addition, the majority opinion appears to be based, at least in part, upon the proposition that FitzGerald resigned after the three arbitrators had considered a tentative draft of a proposed award and after the case had been "practically decided." There is no support for this in the facts found by the trial court.

The two members of the board who purported to make a decision after FitzGerald's resignation were entitled to exercise only such power as the agreement of the parties authorized. Indeed, the basic test of the validity of an award lies in its conformity to the agreement providing for the submission to arbitration. *American Brass Co.* v. *Torrington Brass Workers' Union,* 141 Conn. 514, 521, 107 A.2d 255; *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* supra, 594. The two arbitrators had no authority to deprive the plaintiff of the right, given by the agreement, to name a successor arbitrator within three days from the time when FitzGerald resigned. In my opinion the trial court erred in denying the plaintiff's application to vacate the arbitration award.

In this opinion ALCORN, J., concurred.