[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO VACATE (#101)
The plaintiff, City of Torrington has filed a motion to vacate an arbitration award according to General Statutes 52-418(a) on grounds that the award was issued to defendant: AFSCME, a labor union who represented one of plaintiff's employees in an employment grievance after said employee failed to receive a promotion in 1985, after the withdrawal of plaintiff's representative on the arbitration panel, the plaintiff was not notified of such withdrawal, and an alternative board member was not appointed to represent plaintiff's interests at the final arbitration meeting. CT Page 8393
The parties stipulate that pursuant to a collective bargaining agreement they appeared before The Connecticut State Board of Mediation and Arbitration (Case No. 8586-A-824) on May 3, 1988 after attempts to resolve the grievance independently failed. Three arbitrators were present at that hearing: Gary Bergeron representing plaintiff, Frank Avallone representing the defendant on behalf of the grievant, and Frank Logue as a neutral appointee.
At the conclusion of that hearing the arbitrators discussed the case. Neutral arbitrator, Logue, stated no decision had been reached, but plaintiff's representative, Bergeron, believed that a consensus existed and that defendant had won.
Briefs were filed on June 20, 1988 and in April of 1989 a final hearing was arranged by neutral arbitrator Logue. At that time, plaintiff's representative, Bergeron, told Logue that a conflict of interest had arisen and Bergeron would no longer be able to represent the plaintiff's interests in the dispute. The conflict of interest arose because Bergeron had recently accepted a position of employment with the defendant and had been working for the defendant since March 13, 1989. The plaintiff was not informed of Bergeron's withdrawal from the panel and learned of his withdrawal only after it received a copy of the award decision.
Mr. Logue and defendant's representative thereafter met in May of 1989 at the final hearing and concluded unanimously that the plaintiff had wrongly deprived grievant of the promotion and issued an award stating that plaintiff was to promote grievant within thirty days and pay grievant any accrued back pay he would have received according to the promotion, The award was signed by Logue and Avallone and was issued on June 7, 1989. The award noted that ". . .Bergeron, a member of the panel at the time of the hearing, has disqualified himself from participating in the decision due to potential conflict of interest." (Application to Vacate at 4.)
On June 30, 1989 the plaintiff, City of Torrington, filed this motion to vacate an arbitration award issued on June 7, 1989 to the defendant, the Local 1303-32 of Council 4, AFSCME, AFL-CIO. The plaintiff alleges that the award was obtained by fraud and undue means, and further, that one or more of the arbitrators demonstrated evident partiality in deciding the award. On July 19, 1991, the defendant filed a memorandum opposing plaintiff's application to vacate on the grounds that the award conformed with statutory guidelines governing arbitration procedures and the arbitrators did not exhibit bad faith in their execution of the award.
The plaintiff's motion to vacate is premised upon the argument that arbitration panel members who issued the award to the defendant on June 7, 1989 exhibited "evident partiality" and used "fraud[ulent] CT Page 8394 or undue means" to arrive at their decision, thereby rendering the award void according to General Statutes 52-418(a). Section 52-418(a) states, in relevant part, that a judge "shall make an order vacating the award if it finds. . . (1) the award has been procured by corruption, fraud or undue means; [or] (2) if there has been evident partiality or corruption on the part of any arbitrator." General Statutes 52-418. In order to grant a motion to vacate on these grounds, the court must find that the plaintiff has "produce[d] evidence sufficient to invalidate [the award]." VonLangendorff v. Riordan, 147 Conn. 524, 527, ___ A. ___
(1960). Moreover, "[i]t is the established policy of the courts to regard awards with liberality, [and] every reasonable presumption. . . will be made in favor of the award and of the arbitrators' acts and proceedings." Id. Schwarzschild v. Martin, 181 Conn. 316, 327, ___ 624 ___ A.2d ___ 774 (1983).
The statutory guidelines governing the formation of arbitration panels are set forth in General Statutes 31-93. In relevant part 31-93 states:
 . . .the [mediation] board shall be represented by a panel of three of its members. . .In each case, the employee or his representative appearing before said board shall be permitted to designate the labor member of the board of mediation and arbitration who shall serve and the employer or his representative appearing before said board may designate the employer member of the board of mediation and arbitration who shall serve. . .Whenever members are unable to serve in accordance with the provisions of this chapter.
General Statutes 31-93.
The plaintiff contends that its interests were not represented throughout the course of the arbitration process in accordance with 31-93 and the award is therefore defective on its face. In particular, the plaintiff relies on the arbitrator's failure to notify it of Bergeron's withdrawal from the arbitration process and the failure to name an alternative appointee to represent the plaintiff's interests at the executive session. Although the plaintiff's brief states that "[it] does not argue. . .that a successor panel. . . or a substitute management member should have been appointed," it appears that the plaintiff relies on this implication when it later complains, "[t]hough the statute provides for a management arbitrator on a tripartite hearing panel, the same was not provided to [plaintiff]. . . at the most crucial stage of the proceeding — [the final hearing in May of 1989]."
The City argues that the absence of a third arbitrator at the executive session so violates the spirit of the statutory guidelines set forth under 31-93 that it should be considered "undue means" or "evident CT Page 8395 partiality" according to 52-418(a). In effect, the plaintiff is asking the court to construe the language of 31-93 as requiring that when a member of the arbitration panel withdraws, a substitute representative must be appointed.
Whether the use of the word "may" in 31-93 should be construed to create a mandatory provision is a question of statutory construction. According to Farricielli v. Connecticut Personnel Appeal Board, "words should be interpreted according to their plain and ordinary meaning," and although the use of the word "shall" is commonly mandatory, use of the word "may" reflects a directory intent. Farricielli v. Connecticut Personnel Appeal Board, supra at 203. The general test for determining whether a statutory provision is mandatory is "`whether the prescribed mode of action is of the essence of the thing to be accomplished, or, in other words, whether it relates to matter material or immaterial — [a] matter of convenience or substance.'" Engle v. Personnel Appeal Bd., 175 Conn. 127, 130, 394 A.2d 731 (1978), quoting Gallup v. Smith, 59 Conn. 354, 358, 22 A. 334 (1890); Vartuli v. Sotires, 192 Conn. 353 360, 472 A.2d 336 (1984).
Statutory language should, however, be interpreted in a manner that is consistent with the context in which it appears. See Karp v. Urban Redevelopment Commission of City of Stamford, 162 Conn. 525, 530-31,294 A.2d 633 (1972) (holding that "the word `may'. . .is to be interpreted as mandatory rather than directory if the context of the statute permits and it is necessary to do so in order to make the statute effective to carry out the legislative intent.") Thus, where the legislature has used both "shall" and "may" in the same provision, such use "`[is] a factor that evidences affirmative selectivity of terms. . . ,'" and it must be assumed that the legislature had "`. . . a full awareness of the difference in their ordinary meanings.'" Farricielli, supra 203, quoting Jones v. Civil Service Commission,175 Conn. 504, 509, 400 A.2d 721 (1978).
In the present case, 31-93 contains references to both "shall" and "may." The first sentence states that "the board shall be represented by a panel of three of its members," but when the provision refers to withdrawal and substitution of alternative members, the language reads, "alternative members may be delegated." General Statutes 31-93
(emphasis added). Therefore, the apparent legislative intent was to ensure three members were appointed at the outset and to allow, but not require, alternative representation if any one of the arbitrators should withdraw.
Although existing case law fails to directly address whether failure to appoint an alternative arbitrator under 31-93 may constitute evident partiality or undue means when the movant was not notified of its representative's withdrawal, the Connecticut Supreme Court addressed a similar issue in Amalgamated Assn. of Street Electrical Railway Motor Coach Employees of America, A.F.L. v. The Connecticut Co., CT Page 8396142 Conn. 186, ___ A.2d ___ (1955). In Amalgamated the court construed a private arbitration agreement, which stated that substitute appointees "shall" be made in cases of withdrawal, as meaning that appointment of alternative arbitrators need only occur in cases where it would be necessary to save the arbitration process. Id., 193. Thus, the court held:
 [W]here an arbitration agreement provides that the decision of the issues may be by a majority of a board of arbitrators, and also provides for the appointment of successor arbitrators, it is not necessary to appoint a successor arbitrator [when a vacancy occurs] after all the arbitrators have heard the evidence and the claims of the parties and have had an opportunity to discuss the issues among themselves. When the vacancy occurs at that time, the remaining arbitrators may proceed to make an award if a majority of the original board can agree to the award.
Id. The court consequently rejected plaintiff's claim that, "the award was procured by undue means in that it was decided upon by only two of the arbitrators appointed by the union and before the expiration of the three-day period within which it is claimed, the union had the right. . . to appoint a successor." Id. 191.
It should be noted that although Amalgamated deals with the proper construction of a private arbitration agreement and does not address the statutory arbitration procedures under 31-93, Amalgamated provides a framework of analysis that is applicable to plaintiff's claim in the present case. First, plaintiff asks the court to infer wrongdoing by the defendant based upon apparent noncompliance with the statutory guidelines. However, 31-91 does not mandate automatic replacement of arbitrators in the case of withdrawal and, according to Amalgamated, the court will not infer undue means or evident partiality when the original arbitrators have had the opportunity to discuss the dispute and argue the evidence before the vacancy occurs. Amalgamated, supra 193.
The plaintiff concedes in its brief accompanying the motion to vacate that all three arbitrators were present at the first hearing in 1988 and that Bergeron left that hearing believing the defendant had won. According to the facts stipulated to by the parties, the arbitrators did not meet at all during the rest of 1988 and planned to meet only one more time at the final hearing in May of 1989. Based upon these facts, there was little left to discuss after the first meeting and the remaining two members had heard enough of the evidence and arguments to reach a decision without appointing a substitute for Bergeron. Moreover, although plaintiff claims it was prejudiced by not having a representative at the second meeting and by not being CT Page 8397 notified of the vacancy, it is stipulated by both parties that Bergeron believed the plaintiff had lost after the first meeting. Thus the appointment of a new representative would not have made any measurable difference in the outcome.
In the absence of clear proof of fraud, judgments will not be vacated. Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317 (1980); Gelinas v. Gelinas, 10 Conn. App. 167, 173-74, 522 A.2d 295, cert. denied204 Conn. 802 525 A.2d 965 (1987). Similarly, where there is no substantial likelihood that the result of a new trial will be different, a motion to vacate on the basis of fraud will not be sustained. Billington v. Billington, 23 Conn. App. 45, 578 A.2d 674 (1990). The plaintiff has failed to meet its burden of proving the existence of fraudulent conduct or evident partiality, nor has plaintiff presented facts which demonstrate a substantial likelihood of prevailing if new arbitration hearings were instituted. Accordingly, the City's motion to vacate under General Statutes 52-418(a) is denied.
PICKETT, J.