[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION IN RE:A. PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION ANDB. DEFENDANT'S MOTION FOR A STAY
PRELIMINARY STATEMENT
On May 28, 1996 the above entitled application for injunctive relief was printed upon the Special Proceeding Calendar and upon being reached, the parties proceeded to present arguments with supporting affidavits, memoranda of law, and exhibits. During the hearing the parties agreed that the Arbitration Decision of June 12, 1995 under Rule 11 could be confirmed; whereupon the court confirmed that decision. Before the arguments concluded, the defendant requested that their request for a stay of action be considered. Since that motion was not printed upon the calendar, the court indicated that it would not be granted. Subsequent to the hearing the court learned it was agreed that that motion could be considered by the court and accordingly the request for injunctive relief and the request for a stay were taken under advisement with post hearing briefs.
FACTS
Phibro Division of Salomon ("Phibro") and Term Commodities, Inc. ("Term") at all pertinent times were members of the Coffee, Sugar and Cocoa Exchange, Inc. ("The Exchange"). As members of the Exchange they had agreed to be bound by the Arbitration Rules of the Exchange, which appear to be all inclusive of disputes within members.
A brief treaty relating to the June 12, 1995 Arbitration Decision (Rule 11) can be summarized as follows.
On or before April 30, 1995, Phibro and Term bought and sold, respectively, on an anonymous basis through the Exchange, a number of identical, standardized "Sugar No. 11" contractors for foreign delivery of raw sugar in loose form commencing in May CT Page 5252-AAAA 1995. Phibro and Term were subsequently matched by the Exchange with respect to their obligations as seller-deliverer and buyer-receiver, respectively, with regard to delivery under 6,495 of these contracts for a total of 324,750 long tons of sugar.
Under the Sugar No. 11 rules, Phibro was obliged to deliver fifty (50) long tons of sugar per contract to a vessel or vessels of Term's choice at any non-United States port or ports of Phibro's choice. Phibro opted to make the entire delivery of the sugar under the contracts at the Brazilian port of Santos. Shortly after Phibro began delivery under the contracts, Term claimed that Phibro's method of delivery at Santos violated the Rules of the Exchange, which specify the terms and conditions of the Sugar No. 11 contract. Under Rule 11.11 of the Exchange, disputes arising between members [of the Exchange] claiming that a member has failed to meet his obligations as Deliverer or Receiver under a Sugar No. 11 Contract traded on this Exchange shall be settled by arbitration. Term elected by notice to Phibro and the Exchange on May 15, 1995 to demand a special expedited arbitration of its claim against Phibro (hereinafter the "Sugar Delivery Arbitration"). A committee of experts drawn from the sugar trade (the "Special Arbitration Committee," hereinafter the "Sugar Delivery Panel"), all of whom were members of the Exchange's Sugar Delivery Committee, was thereafter duly appointed to hear the dispute.
The parties made written prehearing submissions to the Sugar Delivery Panel in support of their positions. In due course a hearing was held on May 25, 1995, before the Sugar Delivery Panel, at which point the parties had the opportunity to offer testimony from witnesses and to present oral arguments. The parties also made written post hearing submissions to the Sugar Delivery Panel.
On June 12, 1995, the Sugar Delivery Panel rendered its decision. In its Award, the Sugar Delivery Panel determined that Phibro had not as of that date failed to perform its obligations to Term under the May 1995 Sugar No. 11 Contracts and accordingly dismissed Term's claims against Phibro. The June 12, 1995 decision directed that:
"A. Based on the Committee's consideration of the documentary evidence and testimony of the parties, Phibro has, not as of this date failed to perform its obligations as a Deliverer under Sugar No. 11 Rule 11.10(2)(A). CT Page 5252-BBBB
B. Consequently, Term's claims against Phibro are dismissed.
C. This decision is final and binding upon each of the parties to this arbitration".
On January 5, 1996, Term filed with the Exchange a Notice of Arbitration under Exchange Rule 6, which governs arbitration between members generally. The Notice states that Terms seeks damages in the amount of five million dollars for Phibro's "[f]ailure . . . to make delivery [under the Contracts] . . . in accordance with . . . Sugar `11' Rules." The Exchange provided a copy of this Notice to Phibro.
On April 17, 1996 Phibro requested that the Exchange delay arbitration until a court could rule on the legal preclusion issues presented by the award in the first arbitration. On May 7, 1996, the Exchange informed Phibro that there would be no delay and the arbitration process was to go forward.
On May 13, 1996, Phibro obtained from this court, an order to show cause why the arbitration award should not be confirmed and why a temporary injunctive enjoining Term from relitigating or rearbitrating any issue that was or could have been raised in the arbitration culminating in the sugar delivery Panel's award dated June 12, 1995 should not be issued.
Term claims that their grievance under Rule 6 is clearly arbitrable since the 14 vessels nominated by Term arrived at the port and tendered their Notices of Readiness within the time periods (from May 1 through July 15, 1995). However, the vessels were loaded very slowly and the last vessel did not complete loading until September 18, 1995, resulting in five million dollars in damages. Phibro claims that confirmation of the June 12, 1995 precludes repetitive arbitration as a matter of res judicata, collateral estoppel and contract law.
PLAINTIFF'S APPLICATION FOR A TEMPORARY INJUNCTION.
In order to obtain a temporary injunction, the plaintiffs must establish: (1) that they have no adequate remedy at law; (2) that they will suffer irreparable harm if the application for injunctive relief is denied; and (3) that they are likely to succeed on the merits. Connecticut Association of ClinicalLaboratories v. Connecticut Blues Cross, 31 Conn. Sup. 110, CT Page 5252-CCCC 113-14, 324 A.2d 288 (Super.Ct. 1973). See also Griffin Hospital v.Commission on Hospitals Health Care, 196 Conn. 451, 457-58,493 A.2d 229 (1989). However, even if these facts are proved, the court may deny the application if it finds that potential harm to the defendant from the granting of an injunction outweighs any harm the plaintiff may suffer if an injunction does not issue.Horton v. Meskill, 195 Conn. 234, 247 (1985). Parties have the right to seek injunctive relief to prevent the arbitration of nonarbitrable matters. Dean Witter Reynolds, Inc. v. Mccoy,995 F.2d 649 (6th cir. 1993).
In seeking injunctive relief the plaintiffs argue that the defendant's grievance under Rule 6 is not arbitrable because once the prior arbitration was confirmed, it precludes repetitive arbitration as a matter of Res Judicata, Collateral Estoppel and Contract Law. The issues to be decided by the court are whether the preclusive effect of the June 12, 1995 decision bars repetitive arbitration which would result in irreparable harm if the application for injunctive relief is denied, whether the arbitrability of those issues in the first instance is to be determined by the court or the Arbitration Committee of the Exchange, what are the new claims, and what claims are barred by the June 12, 1995 award.
The language of an arbitration clause in a contract determines whether the arbitrability of a dispute is a question for the court or for the arbitrators. The parties are free to set the limits of the arbitrator's authority but, once having agreed on those limits, cannot vary them except by mutual consent. Specific designations of arbitrable matters is unnecessary if the language of the arbitration clause indicated that the parties intended to include all controversies which might arise under the principal agreement between them.
The courts are empowered to direct compliance with the provisions or arbitration agreements, but no one may be compelled to arbitrate a dispute outside the scope of the agreement, which constitutes the charter of the entire arbitration proceeding and defines and limits the issues to be decided by the arbitrators.Amalgamated Assn. v. Connecticut Co., 142 Conn. 186, 191,112 A.2d 501.
In apportioning, between the court and the arbitrators, the responsibility for determining which disputes are arbitrable, the language of the contract controls and determines whether the CT Page 5252-DDDD arbitrability of a dispute is for the court or the arbitrators.A. Sangivanni Sons v. F.M. Floryan Co., 158 Conn. 467,262 A.2d 159.
Under the facts in this case the court believes that the appropriate determination is for the arbitration committee at least in the first instance.
"Since the finality clause does not exclude from arbitration any class of disputes and since the arbitration clause encompasses the present dispute, if follows that the present dispute is arbitrable . . . it follows that questions as to the applicability of the finality clause — in the sense of whether the [prior] award adjudicated the issues raised in the present dispute — or as to its effect — in the sense the res judicata
effect . . . — are assigned, at least in the first instance, to the Panel or the impartial arbitrator. Id. at 969. Transit/Mix,809 F.2d 963.
A. Although the award of June 12, 1995 is final and binding upon the parties, events after June 5, 1995 to September 18, 1995 must be considered at the next arbitration. A transcript of that hearing is being requested and Term's counsel here represented that they are also requesting an articulated decision of the arbitrator's committee. The court finds that if those conditions are met then the plaintiff will have an adequate remedy at law and will not be irreparably harmed.
While the court has reviewed the Phibro request for preclusion on the grounds of Res Judicata and Collateral Estoppel, the court believes, that under the present set of facts as they exist at this time, that they do not support the necessary findings required by either of the doctrines.
Phibro argues that the complaint is barred by the doctrine ofres judicata. "A judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore,439 U.S. 322, 326, 58 L.Ed.2d 552, 99 S.Ct. 645 (1979); Murphy v.Gallagher, 761 F.2d 878, 879 (2d. Cir. 1985). "The parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." In re TeltronicsServices., 762 F.2d 185, 190 (2d Cir. 1985). The proponent of res CT Page 5252-EEEE judicata must demonstrate that: (1) the court rendered a final judgment on the merits in the prior case; (2) the prior suit involved the same parties or their privies; and (3) the opponent bases the subsequent suit on the same causes of action. See NLRBv. United Technologies Corp., 706 F.2d 1254, 1259 (2d Cir. 1983).
The doctrines of res judicata and collateral estoppel apply to an arbitral decision. See James L. Shapier Agency, Inc. v.Green, 190 F. Sup. 713, 719 (S.D.N.Y.), aff'd, 239 F.2d 769 (2d Cir. 1961). Accordingly, a court will give an arbitration decision preclusive effect where the traditional prerequisites for preclusion are met.
As to collateral estoppel, it prevents the relitigation of an issue that was raised, litigated, and decided in a prior proceeding. Unlike res judicata, however, collateral estoppel precludes the relitigation of conclusively determined issues even if the plaintiff bases the subsequent suit on a different cause of action. G T Terminal Packaging., 719 F. Supp. at 159.
For collateral estoppel to apply, a party must show (1) that the issue was not only litigated but also was necessary to the outcome of the prior action; and (2) that the litigant had a full and fair opportunity to litigate its case. Jim Beam Brands Co. v.Beamish Crawford Ltd., 937 F.2d 729, 734 (2d Cir. 1991). Although no one factor is dispositive, a court considers: (1) whether the same transaction is at issue; (2) whether the same evidence is needed to support both claims; and (3) whether the facts essential to the second action were present in the first.
At the time of the June 12, 1995, the transaction was not completed. The ultimate essential facts which must be considered during the present arbitration were events from June 5 to September 18, 1995. Until there is a transcript and an articulated decision for any award under Rule 6, neither Res Judicata or Collateral Estoppel can be found to be controlling at this time.
It must be concluded that Phibro has not established the existence of such a situation as would justify the use of the court's injunctive powers. "No court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it. Those fears or apprehensions may exist without any substantial reason. Restraining the action of an individual or a corporation by injunction is an extraordinary CT Page 5252-FFFF power, always to be exercised with caution, never without the most satisfactory reasons. Not the applicant only, but the court, must be satisfied that a wrong is about to be done, or an injury is about to be sustained, which, practically, will be irreparable, before resort should be had to this extreme power."Goodwin v. New York, N.H. H.R., 43 Conn. 494, 500; Brainard v.West Hartford, 140 Conn. 631, 634. In the circumstances of the present case, there has-been no showing that the plaintiff will be irreparably harmed in the event that the temporary injunction is denied. Furthermore it appears that the plaintiff does have an adequate remedy at law.
As a matter of policy, arbitration is favored. "Arbitration is an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established tribunals of justice; and it is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation." In re Curtis-Castle Arbitration, 64 Conn. 501,511; Liggett v. Torrington Building Co., 114 Conn. 425, 431.
B. `DEFENDANT'S MOTION FOR A STAY OF ACTION UNTIL PENDINGARBITRATION HAS BEEN HAD'.
Since Connecticut substantive law applied to this proceeding Section 52-409 of the Connecticut General Statutes is found to be controlling.
Sec. 52-409. Stay of proceedings in court. If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making applications for the stay shall be ready and willing to proceed in with the arbitration.
Since the court has found the parties have agreed to arbitrate and that the issue in this proceeding is properly at this time referable, at least in the first instance, to the arbitration committee the court must stay the proceeding, seeGary Excavating, Inc. v. North Haven, 164 Conn. 119.
Accordingly, the request for injunctive relief is denied and CT Page 5252-GGGG the request for a stay is granted.
RYAN, J.