FRANK KASTNER *vs.* BEACON OIL COMPANY, INCORPORATED.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 23d, 1931—decided January 19th, 1932.

*Lawrence L. Lewis* and *Richardson Bronson,* for the appellant (defendant).

*Aaron Nassau,* with whom, on the brief, was *Francis P. Rohrmayer,* for the appellee (plaintiff).

Avery, J.  Dixie Filling Stations, Inc., holding a leasehold interest in a certain piece of property on Farmington Avenue, West Hartford, entered into a contract with the plaintiff to operate a gasoline filling station on the premises.  The contract was to run for seven years and ten months from January 7th, 1923.  Under it, the plaintiff agreed to buy from Dixie Filling Stations, Inc., his full supply of gasoline and oil at a determinable figure which, according to the contract, was the "regular open tank wagon price"; and the plaintiff was given the exclusive sale of Dixie gasoline, kerosene and motor oils at the station, and agreed that no other gasoline and motor oils were to be sold there.  Dixie Stations agreed to pay the ground rent and to reimburse the amount of plaintiff's expenses on buildings and yard for two years if, for any reason, the plaintiff agreed to give up his contract on the station.  Subsequently, in November, 1924, all rights under the contract were assigned by Dixie Filling Stations, Inc., to Beacon Oil Company, Inc., the defendant, and the plaintiff agreed to purchase and sell, in the future, only the products handled by that company.  The parties appear to have had no difficulty under the contract until March 5th, 1930.  The plain-

tiff, in his complaint, claimed that on that date the defendant refused to furnish gasoline at the agreed price, and March 15th entered the property and excluded the plaintiff from thereafter conducting business thereon.

The parties were at issue before the jury principally as to whether the defendant had broken the contract by refusing to deliver gasoline at the agreed price, and retaking the station into its possession; or whether the plaintiff had himself committed a breach by selling products other than those of the defendant. On these issues, the jury brought in a verdict for the plaintiff of $2185.50. The errors assigned on this appeal are the charge of the court to the jury on the question of damages, the refusal of the court to set aside the verdict as excessive, and a ruling upon evidence.

The court instructed the jury in effect that if they found for the plaintiff, they could award him as damages such sum as the evidence reasonably might show he would have realized as profits from the conduct of the business from the time of the breach until the expiration of the contract. It is the contention of the defendant that the true rule of damages is the difference between the wholesale price of gasoline, and the price at which the defendant had agreed to sell the same, in accordance with the rule established under the Sales Act in cases of breach of contract to deliver goods. General Statutes, § 4687.

The agreement in question, however, is, in its essence, more than a mere contract for the sale of goods. The defendant agreed to rent the gasoline station for the plaintiff and to furnish him, at certain prices, merchandise to be sold therein. The plaintiff was to have the exclusive sale of defendant's products at the station which he agreed to operate, and agreed, further, to sell only defendant's products. The defendant re-

fused to deliver its products at the price agreed upon, and the plaintiff was under no obligation to accept them at the increased price charged. He could not sell other products without himself committing a breach of the contract, nor can we assume that the purchase by him of gasoline sold under other trade names would place him in the same position he held as a dealer in the defendant's gasoline and oils. There was then no market open to him where he could procure the same product he had been selling or one which we can regard as the equivalent of it. The difference between the contract price of goods sold and the market or current price is stated by the statute to be the measure of damages only where there is an available market for the goods in question. The rule of damages insisted upon by the defendant would have no application in such case. The principle applicable to such situation is set forth in *Stanton* v. *New York & Eastern Ry. Co.*, 59 Conn. 272, 283, 22 Atl. 300: "It is a general rule of law that one who violates his contract with another is liable for all the direct and proximate damages which result from such violation. It is a rule so obviously just and so well established by authority that it ought not to be called in question. It is also a rule of law that 'in all cases of prevention of performance, where the plaintiff has been deprived by the defendant of the benefit of the contract, the plaintiff is entitled to recover what he has lost by the act of the defendant.'" See also *Wells* v. *Abernethy*, 5 Conn. 222, 227; *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 480, 35 Atl. 521. The claim of the defendant that plaintiff should have minimized his damages by remaining at the station and selling other products, is sufficiently answered by the fact, agreed upon by both parties, that the defendant, holding the

lease of the premises, entered and took possession of them. The plaintiff was entitled to recover as damages such profits as the evidence might show he would reasonably have received if permitted to operate the station from the time of the defendant's breach until the expiration of the contract period, a matter of about eight months. The profits claimed in this case were not so indefinite or uncertain in amount as to preclude their award as damages. *Tompkins, Inc.* v. *Bridgeport,* 94 Conn. 659, 684, 110 Atl. 193; *Ball* v. *Pardy Construction Co.,* 108 Conn. 549, 551, 143 Atl. 855; *Belisle* v. *Berkshire Ice Co.,* 98 Conn. 689, 700, 120 Atl. 599; *Churchill Grain & Seed Co.* v. *Newton,* 88 Conn. 131, 134, 89 Atl. 1121; 3 Williston, Contracts, § 1345; 1 Sutherland, Damages (4th Ed.) §§ 63, 78.

With reference to the amount of the verdict, there was testimony by the plaintiff that his profit from the operation of the station was about $10 a day. He testified, further, that in the year 1928 his net profit was about $3400; and in 1929, the gross was $3200, and the net something less. He explained the smaller profit in 1929 by the fact that, owing to sickness in his family, he was unable to properly attend to business in that year. Considering all the evidence, there was a reasonable basis on which the jury could find that the plaintiff's probable profits for the unexpired term of the contract would be as much as the amount of the verdict. It is true that the defendant offered evidence to the jury showing the number of gallons of gasoline purchased from it and computed the profits of the plaintiff on that basis as a somewhat smaller amount. The jury, however, were not bound to believe the testimony of the defendant in these matters in determining the amount of the damages. The motion to set aside the verdict was properly denied.

The ruling on evidence does not require discussion. There is no error.

In this opinion the other judges concurred.