## THE KAY PETROLEUM CORPORATION *v.* LOUIS PIERGROSSI ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued February 7—decided March 27, 1951

*Leo V. Gaffney,* with whom was *William F. Mangan, Jr.,* for the appellants (defendants).

*Robert L. Krechevsky,* for the appellee (plaintiff).

BROWN, C. J.   The plaintiff is a distributor of petroleum products in Hartford County.   The defendants are proprietors of a gasoline service station in Plainville. The plaintiff sued the defendants for loss of profits resulting from an admitted breach of contract by the defendants.   Judgment was for the plaintiff and the defendants have appealed.

These further facts appear in the finding, which is not subject to correction:   Prior to May 31, 1947, the defendants acquired a piece of land in Plainville upon which they desired to erect and operate a gasoline service station.   A representative of the plaintiff aided them in obtaining the necessary materials and permits. On the above date, the parties executed an exclusive sales contract whereby the defendants agreed to purchase from the plaintiff and it agreed to furnish, at prices to be determined as specified, the entire supply of gasoline and oils to be used or sold at the gasoline station.   From September 11, 1947, to September 1, 1948, the plaintiff delivered to the defendants gasoline, motor oil and grease, which they sold exclusively in accordance with the contract.   On September 1 the defendants notified the plaintiff that they would no longer handle its products and that it should make no more deliveries.   When the defendants thus terminated the contract, it had three years and nine months to run.   The plaintiff has been at all times ready, willing and able to continue performance of its part under the contract.   The plaintiff's gasoline was brought into Connecticut from New Jersey.

One of the court's conclusions was that the net profit

to the plaintiff from the sale of its products at the defendants' service station from September 11, 1947, to August 31, 1948, was $806.57. Error is assigned in this conclusion. In addition to the facts recited in the preceding paragraph, the court found that the plaintiff's gross profit from the sale of its products at the service station was $1153.16 and that its net profit was $806.57, "computed on the basis of [the plaintiff's] sales to all of its stations." These findings of subordinate facts are unchallenged by the defendants and of themselves provide support for the conclusion. Error is assigned, however, in the failure of the court to find that the net profit "was computed as the net derived from the sales of gasoline to all [the plaintiff's] stations and not to the defendants' station alone." The evidence discloses that the defendants are not entitled to the correction asked. It shows that in arriving at the net amount of $806.57 the cost of delivery used was the cost of delivery to Plainville. This was the proper method of determining net profit.

At the close of the plaintiff's case the defendants rested without offering any evidence, and they concede that they breached the contract as claimed by the plaintiff. They rely upon two special defenses, however, as excusing them from liability, first, that the contract was void under § 3 of the Clayton Act (38 Stat. 731, 15 U. S. C. § 14), and, second, that the contract lacked consideration. That this second defense is without merit is manifest from the fact that an exchange of promises was contained in the contract. *Finlay* v. *Swirsky*, 103 Conn. 624, 631, 131 A. 420. The court did not err in overruling this defense.

The court further concluded that the Clayton Act could not avail the defendants. The gist of their claim is that the contract is violative of the act by reason of the restriction imposed by their agreement

not to deal in the gasoline products of anyone other than the plaintiff. Section 3 of the act provides: "[I]t shall be unlawful for any person engaged in commerce, in the course of such commerce, to . . . make a sale or contract for sale of . . . commodities . . . for . . . resale . . . on the . . . understanding that the . . . purchaser thereof shall not use or deal in the . . . commodities of a competitor . . . of the . . . seller, where the effect of such . . . sale, or contract for sale . . . may be to substantially lessen competition or tend to create a monopoly in any line of commerce." The act is applicable only where interstate commerce is affected. The mere fact, however, that the contract relates to products which fall within the scope of interstate commerce does not necessarily render an agreement unlawful under the act. See *Slaggert* v. *Case,* 319 Mich. 200, 202, 29 N. W. 2d 280; *Quincy Oil Co.* v. *Sylvester,* 238 Mass. 95, 97, 130 N. E. 217; *Lipson* v. *Socony-Vacuum Corporation,* 76 F. 2d 213, 218. It is, of course, true that a contract such as the present one may affect interstate commerce by preventing the dealer from doing business with some other distributor in an interstate transaction. That in itself, however, does not make the contract violative of the statute. To bring a case within the section, it is essential that the contract be operative to foreclose competition in a substantial share of the line of commerce affected. *United States* v. *Standard Oil Co.,* 78 F. Sup. 850, 857, aff'd, 337 U. S. 293, 314, 69 S. Ct. 1051, 93 L. Ed. 1371; *Standard Fashion Co.* v. *Magrane-Houston Co.,* 258 U. S. 346, 356, 42 S. Ct. 360, 66 L. Ed. 653; *United States* v. *American Can Co.,* 87 F. Sup. 18, 27. In the absence of evidence that a contract is thus effective to preclude competition, there is no basis for considering that it is unlawful under the act. *Sunset Oil Co.* v. *Vertner,* 34 Wash. 2d 268, 278, 208 P. 2d 906; *United States* v. *Standard Oil Co.,* 78 F. Sup. 850,

863. In the instant case, not only were no facts found but no evidence was offered to indicate that this contract was operative to foreclose competition in any degree, let alone to the extent of a "substantial share of the line of commerce affected." *Standard Oil Co.* v. *United States,* 337 U. S. 293, 314, 69 S. Ct. 1051, 93 L. Ed. 1371. The court was correct in concluding that the contract was not void under § 3 of the Clayton Act.

The defendants have also assigned error in the court's further conclusion that the plaintiff was entitled to the sum of $3025 for future damages for the three years and nine months which the contract had to run after its breach by the defendants. The court found as a subordinate fact that "As a result of the breach of contract by the defendants, the plaintiff suffered a loss of $3,025.00." Since no error has been assigned in this finding, of itself it affords a technically sufficient answer to the defendants' claim. This aside, the conclusion was calculated upon the basis of the net profit of $806.57 for the year next preceding the breach. In this connection the defendants claim that in the absence of any evidence that the profit was likely to continue at the same rate the court's conclusion involved an unsupported assumption which rendered it a pure conjecture, and so unwarranted. In a case of anticipatory breach such as this, where the damages to be recovered consist of the loss of prospective profits, the trier must estimate as best it can what the future situation is likely to be. *Home Pattern Co.* v. *Mertz Co.,* 86 Conn. 494, 504, 86 A. 19. Unless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach. They are very often involved in some uncertainty and can be determined only approximately upon reasonable and probable estimates. *Tompkins, Inc.* v. *Bridgeport,*

94 Conn. 659, 685, 110 A. 183; *Maguire* v. *Kiesel,* 86 Conn. 453, 461, 85 A. 689; *Kastner* v. *Beacon Oil Co.,* 114 Conn. 190, 194, 158 A. 214. "Where substantial damage has been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether." 5 Williston, Contracts (Rev. Ed.) p. 3776. In the absence of evidence to the contrary, the court was entitled to draw the inference that the volume of the service station's business would continue to be at least as great as during the year when the parties operated under the contract. Since the net profit for the latter period was $806.57, the finding that the plaintiff lost profits of $3025 has sufficient support and must stand.

The defendants' final claim relates to the court's exclusion of a question addressed to the plaintiff's credit manager on cross-examination. The question was designed to show, in an attempt to mitigate the damages for loss of prospective profits, the uncertainty of the amount of future sales by the plaintiff to the defendants pursuant to the contract. The contract authorized the plaintiff to withhold deliveries upon the defendants' failure to pay. After eliciting from the witness that the credit which the plaintiff extended varied with the customer and that gasoline might be delivered to one who was delinquent thirty days in his payments, defendants' counsel asked: "What is the maximum you have ever extended credit to a retail outlet?" The question was claimed "to establish the custom." The plaintiff's objection to it was sustained by the court, with the comment: "Confine your question to the litigants in this case; we are not trying any other." The ruling was well within the discretion of the court to exclude inquiry as to collateral matters. Had the question been restricted to what the amount of credit was which had been or would be extended to the defend-

ants, a different problem would have been presented.
There is no error.
In this opinion the other judges concurred.