[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORADUM OF DECISION
Lawrence Dalaker and David F. Greco acquired title to the property known as 458 Chopsey Hill Road, Bridgeport, from the Henry S. Stern Trust ("Trust") in September of 1986 for the sum of $125,000. The Trust took back a purchase money mortgage in the amount of $100,000, which was duly recorded on September 15, 1986. The taxes on the property became delinquent, and the Bridgeport Tax Collector levied one or more tax warrants on said property for the grand lists of October 1, 1988, October 1, 1989, October 1, 1990, October 1, 1991, and attempted to sell said premises on August 27 1992. It is undisputable that the Trust mortgagee was never put on notice of this action in clear contravention of Connecticut General Statutes § 12-157.
There being no successful bidder, the Tax Collector executed a deed dated September 3, 1992, to the defendant City to be held CT Page 8644 unrecorded for one year pursuant to § 12-157. Prior to the expiration of the one year period, Mr. Dalaker and the City, acting through its attorney, Joyce Riccio, entered into settlement negotiations which culminated in an agreement dated September 24, 1993, (ex. 5) wherein Dalaker agreed to pay all the tax arrearages, including interest and lien fees, on a schedule acceptable to the defendant. That agreement was basically set forth in a letter (ex. 3) from Riccio to Dalaker dated August 25, 1993. Despite these facts, the defendant admittedly recorded the Tax Collector's deed on August 31, 1993. That action was taken unilaterally and without the knowledge or approval of Mr. Dalaker. On September 24, 1993, Dalaker not only executed the agreement (ex. 5) but tendered his check to Riccio in the amount of $4,000. Within a month, Dalaker was told by Attorney Riccio that the City would not abide by the signed agreement of September 24, 1993, all without explanation or justification. The City was apparently relying on the fact that it now had title to the property.
At this time, Mr. Dalaker notified Bruce E. Stern, one of the co-trustees of the Stern Trust that the City had taken title to the Chopsey Hill property. This was Stern's first knowledge of any of the City's actions concerning taxes on this property. The Trust had received no notice from the City of its action under12-157 before or after the sale. Understandably concerned, Dalaker and Stern continued to attempt to resolve this matter with the City. During this time, the City was maintaining that it was the record owner of the property. In the interim, Stern called the Bridgeport Tax Collector directly, whom he described as totally unresponsive to the fact that Stern had been given no notice of that official's actions in violation of § 12-157. Stern and Dalaker thereafter sought legal advice and this case was instituted.
The parties continued to try and work the matter out amicably. A meeting was arranged for December of 1994 at Bridgeport City Hall and all of the parties were present with the exception of the City Attorney. The meeting was adjourned. Despite that, the parties did reach an agreement where for a reconveyance by the City to the prior owners which must protect the rights of the lienholder, Stern, Dalaker would pay up front $8,000 and agree to pay the balance of $7,567.32 on a schedule acceptable to the City and the City would pay the plaintiffs' attorneys' fees in the amount of $1,500. That is evidenced by a letter from the plaintiffs' lawyer to the City Attorney dated CT Page 8645 December 30, 1994. (See ex. 11.) On that same day, Dalaker forwarded his check for $8,000 directly to the Tax Collector.
The City then provided a sample deed intended to correct the error in recording the tax deed. That deed was not acceptable to the Stern Trust because two title companies refused to insure the title insuring the legal interest of the mortgagee, the Stern Trust, a totally innocent party to the City's actions, which through no fault of its own had its lien rights potentially extinguished or damaged. The plaintiffs' attorney then wrote to the City Attorney on January 20, 1995, describing this problem (see ex. 11). The City Council did approve the settlement agreement and the $1,500 payment for counsel fees. The testimony was to the effect that the Council rejected the request for a stipulated court judgment to resolve the title problem as requested by plaintiffs' attorney. The plaintiffs' attorney continued to press the matter concerning the deed without avail. Again, without approval or notice, the City recorded a deed from itself to Dalaker and Greco on March 9, 1995, without resolving the question of the viability of the Stern mortgage.
Some time in the spring of 1995, Mr. Dalakar, without any notice to the Stern Trust, filed for bankruptcy. Thereafter, the Stern Trust foreclosed on the property and received a certificate of foreclosure which was recorded on July 10, 1997.
The plaintiff Stern testified that if he had been on notice of the intended tax sale in 1992 as required by statute, he would have appeared at the sale and paid the taxes to protect his interest. If this had been done, this lawsuit would have been unnecessary. All of the tax liens still remain on the property, and since acquiring the property by foreclosure in 1997, the Stern Trust has been billed for all the taxes and interest and lien fees on the grand lists of October 1, 1988 through October 1, 1997. (See ex. 25.)
It should be noted that at all times from 1992 to the present either Dalaker or the Stern Trust has received all the rentals from the subject property. The City has not taken possession or attempted to collect rents.
Mr. Stern has testified that his damages include a cloud on the Trust's title, a loss of opportunity to acquire title in 1992, the prosecution of this litigation, attorneys' fees in the amount of $6,726 plus attorneys' fees for the trial and payment CT Page 8646 of an IRS lien in the amount of $1,000. Mr. Stern has further testified that he has not been able to make any tax payments since the Trust acquired title because of the City's insistence that any payments would be applied to the taxes, interest and lien fees beginning in October, 1988.
The initial complaint in this case was dated December 23, 1993, but was later substituted on June 1, 1998 by an Amended Complaint in five counts, Breach of Contract, Estoppel, Waiver, Violation of Connecticut General Statutes § 12-157 and Violation of Constitutional Rights Due to Lack of Notice. The defendants filed its Answer and a Special Defense of Accord and Satisfaction. The plaintiffs in their claims for relief ask the court for a declaratory order limiting their liability for taxes from July 10, 1997, forward, damages involving attorneys' fees and an order declaring that the defendant City has no interest in 458 Chopsey Hill Road except as it may relate to taxes, interest and liens.
This court has rarely seen a case wherein one party is so totally at fault and the other party bears no responsibility for its situation. The City of Bridgeport has violated statutes, breached agreements prepared by itself, gone back on its word continually, and failed to take a simple and final step that would have ended this matter completely back in early 1995. Instead, it has left to this court the unenviable task of sorting out the rights of the plaintiffs as a result of the City's machinations. The City simply says in its brief that despite all of its statutory violations and breach of contract, it owes the plaintiff nothing in damages and the plaintiffs owe all of the back taxes, interest and lien fees in excess of $52,000 from 1989 to the present.
Despite this "pie in the sky approach", the defendant has filed a six page trial brief wherein it does not contest the facts, all of which are detrimental to its cause. It discusses such issues such as third party beneficiary, waiver and estoppel as applied to municipalities, accord and satisfaction, attorneys fees, exclusivity of remedies and the retroactive effect of subsequent legislation, all without the citation of a single case or authority in support of any of its claims. The court will, therefore, fashion a form of relief that it considers as fair to the interests of the remaining parties to this litigation, Bruce E. Stern and Eileen C. Stern, Co-Trustees of the Henry S. Stern Trust and the City of Bridgeport and its then tax collector. CT Page 8647
The court finds that the plaintiffs have established their claims contained in the first, fourth and fifth counts of the Amended Complaint.
The defendant City has filed a special defense to the complaint claiming an accord and satisfaction was reached in late 1994 (see plaintiff's ex. II). The court concludes that no such agreement was ever consummated. Despite the fact that Dalaker paid the $8,000 up front payment to the City and the City agreed to pay $1500.00 towards plaintiffs' counsel fees, no deed satisfactory to the Sterns to restore their first mortgage rights was ever produced. The proposed deed was rejected by two title companies, and the City inexplicably refused to stipulate to a judgment restoring title to Dalaker, which apparently would have satisfied the title companies. As has already been stated, the City recorded the deed anyway as of March 9, 1995. The court further finds there is no evidence to support their special defense of statute of limitations.
As far as count two is concerned, the court finds the issues for the defendants and judgment may so enter. The court does not believe the elements of an estoppel have been proved.
As far as count three is concerned, the court finds that the plaintiff has proven the elements of a waiver as it relates to all taxes prior to the date the City acquired the subject premises on August 31, 1993. The effect of the transfer of title to itself on that date had the effect of extinguishing all liens for taxes, interest, costs and lien fees before that date. For the period August 31, 1993 until March 9, 1995, the City was the title holder to the property and as such waived or has no valid claim against anybody for taxes, lien fees, costs or interest for that period.
The court as part of the judgment will enter an order declaring that the City of Bridgeport has no interest in the premises at and known as 458 Chopsey Hill Road in Bridgeport except for its claims related to taxes, interest and liens on said property which will be discussed shortly.
As for the issue of damages, the City's actions in violation of § 12-157 prevented the trustees from acquiring title as early as 1992, and has made the sale or mortgaging of the premises impossible, has caused a cloud on the title and has CT Page 8648 necessitated an eventual foreclosure action by the plaintiffs in 1997 to reacquire the title. The plaintiffs should have judgment as to counts 4 and 5 of their Amended Complaint in the amount of $6,726 representing past attorneys' fees in presenting this case, $3,500 for attorneys' fees at trial and post trial, and general damages for loss of opportunity in the amount of $12,000 for a total of $22,226. This trial was occasioned by breaches of contract, breaches of statutory provisions and intransigence in resolving the single issue that separated the parties in 1995, that being the removal of the cloud on the plaintiff's mortgage interest occasioned by the City's improper recording of a tax deed to itself. The City's position on the tax issue has made it impossible for the plaintiff to either sell or mortgage their property.
As far as the first count sounding in breach of contract, the court having found the issue for the plaintiffs, awards damages for attorneys' fees in the amount of $10,226 plus $12,000, the same damages as awarded under counts four and five. The test in determining whether a person has enforceable rights as a third party beneficiary to a contract is the intent of the parties.Grigerek v. Sharpe, 247 Conn. 293, 311 (1998). The intent of the parties is to be determined from the terms of the contract read in light of the circumstances attending its making, including the nature and purposes of the parties. Colonial Discount Co. v. AvonMotors, Inc., 137 Conn. 196, 201 (1950). Obviously, if the trust had any notice of the agreement at the time of its execution, which the City by statute was required to give and did not, it would clearly have been intended to benefit as the first mortgagee, whose rights were set forth in Connecticut General Statutes § 12-157.
The intention of the parties in the subject case was clearly to maintain the title status quo, if Lawrence Dalaker made the payments pursuant to the terms of the agreement. The plaintiffs, as holders of the first mortgage, clearly qualify as beneficiaries as to that agreement. Mr. Dalaker had begun performance of the agreement by the initial payment of $4,000 when the defendants declared their intention to refuse to abide by the terms of an agreement prepared by their own attorney.
The attorneys' fees incurred in this case are a direct consequence of the totally illegal activities of the defendants. The plaintiffs had no choice but to initiate this action based on the City's illegal transfer of title to itself with no notice to CT Page 8649 the first mortgagee. These counsel fees were necessary and reasonable and constitute direct financial damages caused by the defendants' illegal activities.
The court will, should any higher court disagree with its analysis regarding waiver, also treat this issue again in its general discussion of taxes under equitable considerations. The plaintiffs are asking the court to exercise its equitable powers to fashion relief with reference to the tax issues. The defendants' position is that the court should find the issues in the case for the plaintiffs but award no damages. The City, by its attorney, stated in its concluding remarks at trial that the resolution of the tax issues could take at least two more cases. This court feels that all of the tax issues are before it, it has heard all the evidence, reviewed the special defense and is in a perfect position to determine on equitable principals the tax issues between the defendant and the remaining plaintiffs, the Sterns. It would be a terrible waste of court resources as well as attorneys' fees for all parties not to resolve this matter once and forever now. The court will consider the taxes in three time periods: (1) Grand Lists of 1988 through the date of August 31, 1993; (2) the period August 31, 1993 until March 8, 1995, when the City held title; and, (3) the period from March 9, 1995 to the present.
For the initial period for the Grand Lists of October 1, 1988 until August 31, 1993, there is no question that the taxes were not paid by the owners Dalaker and Greco. There is no question that a tax sale was attempted, no successful buyer came forth and the City prepared a deed to the property on September 2, 1992 which, pursuant to Connecticut General Statutes § 12-137 it was to hold for one year allowing the owner or any mortgagee an opportunity to redeem. The City never notified the mortgagee, the Stern Trust, of the sale as it was required to do and the Stern Trust lost its opportunity to purchase. In the subsequent year, from the date of the proposed sale, the City again failed to notify the Stern Trust and deprived it again of its opportunity to redeem. But the City did negotiate with Dalaker and in fact entered into an agreement with him to pay the taxes. It then denied him that opportunity by breaking its own agreement.
It is arguable that if the Stern Trust had notice and purchased the property at sale, it would have had to pay the taxes, interest and fees to the date of sale. While that is true, it, under its mortgage, would have had a claim against Dalaker CT Page 8650 and Greco for those taxes and Dalaker, at least with the City, was willing and able to pay them. The City's action deprived the Trust of that opportunity. By the time the Stern Trust had any notice, the City had already deeded the property to itself and not long after Dalaker went bankrupt and thus became immune to any claim by the Sterns. Between the interests of the Sterns who are totally innocent and the City which violated the law in not noticing the Stern Trust and then breaking its agreement with Dalaker which would have resolved the tax issue, there is no doubt who is at fault, and on that basis, the court determines that the present plaintiffs have no responsibility for taxes, interest, costs and lien fees before August 31, 1993.
From that date until March 9, 1995, the City was the record owner of the property even though it had illegally conveyed title to itself. It was during this period that the City breached its agreement with Dalaker who had promised to make a substantial up front payment of the taxes and substantial monthly payments thereafter. As the title holder, the court declares that the City has no claim for taxes, costs, interest or lien fees as against these plaintiffs.
As for the taxes occurring after March 9, 1995, the court again on equitable considerations finds that the plaintiffs are responsible for those taxes, but not any costs, lien fees or interest. A calculation of those taxes is shown in Appendix C to the plaintiffs' brief and totals $13,125.59 plus subsequent tax years if applicable. The court declares that owing by the plaintiffs to the defendant. The court's reasoning for not awarding interest, lien fees and costs is that the defendants' conduct does not equitably justify it. Again, the defendants in late 1994 and early 1995 had the matter basically resolved with Dalaker and Stern, save the simple step of stipulating to a court judgment that would have restored the mortgage rights of the Stern Trust occasioned by the City's illegal recording of the tax deed. Without any given reason, the City simply refused to do so. To award them interest and lien fees would be unjust.
In addition, the City advised the co-trustees that if they made any payments of taxes after the Trust acquired title by foreclosure in 1997, those payments would be applied to the 1988 taxes, interest and lien fees rather than current taxes. Because of that threat and the existence of this lawsuit, the Sterns simply could not pay taxes without potentially waiving rights in this case. CT Page 8651
In conclusion, the court declares that the only taxes due the City from the present plaintiffs, the co-trustees of the Stern Trust, are from March 9, 1995 to the present and they are without interest, costs or lien fees. On counts 1, 4 and 5 of the complaint, the court awards as damages due the plaintiffs from the City $22,226 plus the cost of this suit.
GORMLEY, J.