[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant, Anthem Health Plans, Inc. ("Anthem"), has moved for summary judgment against ten of the plaintiffs in the above-captioned case.[1] These ten plaintiffs are physicians who claim that Anthem's conduct as an intermediary between them and their patients with regard to authorization of and payment for services breaches Anthem's contractual obligations, including an implied covenant of good faith and fair dealing. The plaintiffs also allege tortious interference with business relationships and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Conn. Gen. Stat. § 42-110b, et seq. Anthem seeks summary judgment against plaintiffs Edward Collins, John J. O'Brien, Robert Biondino, Kevin Lynch, John Irving, Scott Gray, Ronald Ripps, Michael Marks, Kristaps J. Keggi and John M. Keggi as to all counts of the revised complaint.
With regard to the first and fourth counts, in which the ten plaintiffs allege breach of contract, Anthem moves for summary judgment on the CT Page 13135 ground that these plaintiffs are not parties to the contracts that are the source of the obligations they seek to enforce.
Anthem has presented documents indicating that these ten plaintiffs did not sign contracts with it but that they were physicians working in group practices, organized as limited liability corporations ("L.L.C.'s") or professional corporations ("P.C.'s"), that are the parties to the contracts on which these plaintiffs base their claims. The issue is whether the ten plaintiffs therefore lack standing to assert claims based on Anthem's obligations under the agreements.[2]
Plaintiffs' Claims
The plaintiffs, including the ten plaintiffs whose claims are presently at issue, allege in their revised complaint that they "either entered or renewed a Participating Physicians Agreement . . . or a Physicians Group Agreement . . . with [Anthem]. In the Third Count,[3] the plaintiffs allege that Anthem tortiously interfered with their business expectancies of providing treatment to patients who have coverage with Anthem or its predecessor by, among other things, failing to provide "consistent medical utilization/quality management and administration of covered services and by arbitrarily failing to pay for services. (Revised Complaint, Count 3, para. 22). In the Fourth Count, the plaintiffs allege breach of the covenant of good faith and fair dealing in connection with Anthem's obligations under the contracts alleged in the First Count. In the Fifth Count, they allege a violation of CUTPA through failure to discharge obligations under the contracts and through arbitrary and inconsistent administration of authorizations. Anthem asserts that since the contracts upon which the ten plaintiffs base their claims were not with the plaintiffs, but with the professional corporations and limited liability companies that are identified as the contracting entities in those agreements, the ten plaintiffs may not enforce the Agreements and are not owed any obligations by Anthem under those Agreements.
The ten plaintiffs assert that summary judgment as to the contract claims should be denied on three bases:
 1. The Agreements are ambiguous as to the identity of the contracting parties, and the issue is therefore a disputed issue of fact;
 2. That the Groups were acting as their agents in entering into the contracts, and that they may enforce them as principals; and that their status as parties is therefore a disputed issue of fact; and CT Page 13136
 3. That they are third party beneficiaries of the agreements between Anthem and their Groups and as such are entitled to enforce their terms.
Anthem argues that the text of the Participating Physicians Group Agreements must be the basis of any determination as to the parties to those agreements and that those terms may not be varied by parol evidence to the effect that the groups contracted not on their own behalf but on behalf of the plaintiffs as principals.
Standard of review
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49 (formerly § 384). Sherwood v. Danbury Hospital, 252 Conn. 193, 201 (2000); Alvarezv. New Haven Register, Inc., 249 Conn. 709, 714 (1999); Rivera v. DoubleA Transportation, Inc., 248 Conn. 21, 24 (1999); Nichols v. LighthouseRestaurant, Inc., 246 Conn. 156, 163 (1998); Peerless Ins. Co. v.Gonzalez, 241 Conn. 476, 481 (1997).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v. Double A Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's MedicalCenter, 252 Conn. 363, 373 n. 7 (2000).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not CT Page 13137 to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1998); Telescov. Telesco, 187 Conn. 715, 718 (1982).
Undisputed Facts
The defendant has two forms of agreements with regard to its arrangements with physicians who provide health care services to persons enrolled in Anthem's health care plans. The first form, a "Participating Physician Agreement," is one in which an individual physician contracts with Anthem. Two plaintiffs whose claims are not at issue in this motion are alleged to be parties to such contracts. The second form of contract is a "Participating Provider Group Agreement." These agreements are entered into by Anthem with entities that employ or that are composed of multiple physicians. Participating Provider Group Agreements state: "THIS AGREEMENT is made and entered into between [Anthem] . . . and [Provider Group] (the "Group") . . ." The corporate name of the group, not the names of physicians that are members of the group, is filled in on the line provided. These contracts provide that "The Group, through its Represented Providers, shall provide Covered Services . . ." to Anthem's enrollees. "Represented Provider" is defined as follows: a licensed physician or other licensed provider (a) who is employed by, associated with or otherwise represented by the Group; (b) who is authorized by the Group to provide services pursuant to this Agreement; (c) who has completed a Credentialing Application when required by [Anthem] for Credentialing; (d) who has agreed with the Group to be subject to the requirements of this Agreement to the extent applicable to the Represented Provider; and (e) who is accepted by [Anthem] as a Participating Provider for any plan or program pursuant to Section IIC of this Agreement.[4]
None of the ten plaintiffs against whom Anthem's motion is directed signed a Participating Physician Agreement. All are members of corporate groups that signed Participating Provider Group Agreements. Each of these ten plaintiffs signed a document titled Represented Provider Certification and Authorization, in which he certified that he had read the agreement between his group and Anthem, that he was "a Represented Provider as defined in Section I of the Agreement," and that he has agreed with his group to abide by the terms and conditions of the agreement applicable to Represented Providers. In this document, each of the ten plaintiffs authorizes Anthem to pay to his P.C. or L.L.C. any fee to which he is entitled for providing services to members of the Anthem plans. These certifications are not signed by Anthem but only by the physicians.
Edward Collins signed a Represented Provider Certification and CT Page 13138 Authorization on June 2, 1994, that identifies his group as Windham Orthopaedic Surgical Group, P.C. That entity is identified as the party to a Participating Physician Group Agreement signed by Gerard J. Lawrence, M.D. as president of Windham Orthopaedic Surgical Group, P.C.
John J. O'Brien signed a Represented Provider Certification and Authorization on May 25, 1994, that identifies his group as Hartford Orthopedics Surgeons, P.C. That entity is identified as the party to a Participating Physician Group Agreement signed by Dr. O'Brien as vice president of Hartford Orthopedic Surgeons, P.C.
F. Scott Gray and Ronald Ripps signed a Represented Provider Certification and Authorization on June 17, 1996, that identifies their group as Connecticut Family Orthopedics, P.C. F. Scott Gray signed another such certification on October 27, 1998, identifying the same group.
C. Robert Biondino signed a Represented Provider Certification and Authorization on November 16, 1998, that identifies his group as Comprehensive Orthopaedics Musculoskeletal Care, L.L.C. That entity is identified as the party to a Participating Physician Group Agreement signed by Paul H. Zimmering, M.D. in his capacity as "Co-Director" of Comprehensive Orthopaedics Musculoskeletal Care, L.L.C.
John F. Irving signed a Represented Provider Certification and Authorization on September 9, 1998, that identifies his group as The Orthopaedic Group, L.L.C. That entity is identified as the party to a Participating Physician Group Agreement signed by Alan M. Reznik, M.D. as "Member" of The Orthopaedic Group, L.L.C.
Kristaps Keggi, M.D. signed a Represented Provider Certification and Authorization on October 8, 1998, that identifies his group as Orthopedic Surgery P.C. John Keggi, M.D. signed a Represented Provider Certification and Authorization on October 8, 1998, that identifies his group as Orthopedic Surgery P.C. That entity is identified as the party to a Participating Physician Group Agreement signed by Kristaps Keggi, M.D. as President of Orthopaedic Surgery, P.C.
J. Kevin Lynch, M.D. signed a Represented Provider Certification and Authorization on August 1, 1996, that identifies his group as Center for Orthopaedics. That entity is identified as the party to a Participating Physician Group Agreement signed by Dr. Lynch as Secretary/Treasurer of Center for Orthopaedics. The signature line indicates that Dr. Lynch signed in his capacity as a corporate officer.
Michael R. Marks, M.D. signed a Represented Provider Certification and CT Page 13139 Authorization on May 25, 1995, that identifies his group as Barton, Markey, Brody, Marks Lynch, P.C. That entity is identified as the party to a Participating Physician Group Agreement signed by Jerome Barton, M.D. as President of Barton, Markey, Brody, Marks Lynch, P.C.
The Participating Physician Group Agreement sets forth obligations of Anthem to the group and of the group to Anthem. It provides that "The Group, through its Represented Physicians shall provide Covered Services in accordance with applicable laws and standards of care and skill prevailing in the Group's practice community" (Agreement, IIA2), and that claims for fees for services performed are to be submitted by the group (Agreement, IIB4).
Contract Claims
In the first count of the complaint; the ten plaintiffs allege breach of contract, and in the fourth count they allege breach of the implied duty of good faith and fair dealing in performing obligations under contract. The contractual relationships on which the ten plaintiffs base these claims are the Participating Provider Group Agreements.
Status as parties
The ten plaintiffs assert that they are parties to those agreements and therefore have standing to enforce them as individuals, whether or not the groups with which they practice medicine claim a breach. The entities identified as parties in the contracts at issue are Anthem and the various professional corporations or limited liability corporations identified as parties both in the text of the agreements and at the signature lines. The intent of the parties to a contract is to be ascertained by the ordinary meaning of the written words of the contract. Lawson v. Whitey's Frame Shop, 241 Conn. 678, 686-87 (1997).
"It is well settled that `one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . ." Coburn v. Lenox Homes, Inc., 173 Conn. 567, 570,378 A.2d 599 (1977); see also Knapp v. New Haven Road Construction Co.,150 Conn. 321, 324, 189 A.2d 386 (1963).'" Tomlinson v. Board ofEducation, 226 Conn. 704, 718 (1993). Even in the context of collective bargaining agreements, in which the Supreme Court has ruled that individual members of the bargaining unit that contracts with the employer have standing to enforce contract terms as individuals only if the contract specifically provides that a unit member may enforce a particular contract term. Tomlinson v. Board of Education, supra,226 Conn. 720. If the agreement is silent as to enforcement by individual employees, they are deemed to have ceded all enforcement rights to their CT Page 13140 union as their bargaining representative. Id.
Thus, even if the Participating Provider Group Agreements were viewed as the equivalent of collective bargaining agreements, the individual members of the groups that contracted with Anthem would have standing to enforce the contract as individuals only if the contract so provided. No provision in the Participating Provider Group Agreements which the ten plaintiffs seek to enforce provides for the filing of a grievance or enforcement of the contract's terms by any person or entity other than the group that signed the agreement as the contracting party.
Professional corporations and limited liability companies are legal entities that like unions, have the capacity to enter into contracts; and the contracting party is the corporation, not those who work for it or own shares. Conn. Gen. Stat. § 34-124(c); Conn. Gen. Stat. § 33-182; incorporating § 33-647(7). The clear indication on the face of each contract is that the contracting entities are Anthem and the professional corporations or limited liability companies, not individual physicians in those groups. The logic of this conclusion is demonstrated by considering whether it would even have been feasible to contract in a single document with multiple physicians who would all be entitled to urge different and even contradictory interpretations of its terms.
Where a defendant has contracted with a particular corporation or other legal entity, the contract cannot be enforced by a different entity.Christ-Janer v. A.F. Conte Co., 8 Conn. App. 83, 90 (1986). Where a contract is entered into with a corporation, the corporation alone is liable, and the corporate form will be disregarded only in well-defined circumstances where equitable considerations require disregarding the corporation as a distinct entity. See Angelo Tomasso, Inc. v. ArmourConstruction Davis, Inc., 187 Conn. 544, 561 (1982); Saphir v.Neustadt, 177 Conn. 191, 209 (1979 ("Generally, a corporation is a distinct legal entity . . ."); Genovese Enterprises, Inc. v. Sphere DrakeIns., Superior Court, judicial district of Waterbury, Docket No. 128855 (Pellegrino, J. March 26, 1996); Guild v. Exxon Corp., 81 F. Sup.2d 377,380 n. 1 (1999). The ten plaintiffs have advanced no cognizable reason why, not having contracted as individuals with Anthem, they should be permitted to enforce the contract as individuals.
Agency
The ten plaintiffs assert that even if they were not explicitly parties to the Participating Provider Group Agreements, the P.C.'s or L.L.C.'s that are identified as parties signed as their agents. The plaintiffs assert that they, as principals, are entitled to enforce contracts entered into on their behalf by their agents. Each of the ten plaintiffs CT Page 13141 has signed an affidavit conclusorily stating that "I was affiliated with the Group at the time that the Group signed a Participating Provider Group Agreement (the `Agreement') with Anthem Health Plans d/b/a Anthem Blue Cross Blue Shield of Connecticut (`Anthem') to insure, administer, arrange or deliver health services for my benefit and for the benefit of my practice" and that "[a]t the time of the making of the Agreement, by my consent, the Group was my agent, and I was a principal, for purposes of the Agreement."
The ten plaintiffs assert, in effect, that they can alter an agreement which on its face is an agreement with a corporation to make it an agreement with individual physicians by declaring that the P.C. or L.L.C. that signed the contract was not in fact the contracting party, but that the individual physicians were, and that the P.C. or L.L.C. was merely acting as an agent. They claim that their status as principals is a matter of disputed fact, not of law. While the existence of an agency relationship is an issue of fact with regard to establishing the obligations between an alleged principal and the alleged agent, Hallasv. Boehmke Dobosz, 239 Conn. 658, 674 (1997), interpretation of the provisions of written contracts is a question of law. Levine v. Massey,232 Conn. 272, 277 (1995). To determine whether Anthem contracted with the P.C.'s and L.L.C.'s that signed the contracts or with the plaintiffs as individuals, the court must look not to the facts concerning the physicians' relationships with their corporations, but to the words of the contract. Accordingly, while the claim of an agency relationship is factual, it is not a material fact, as the undisclosed arrangement between a physician and his corporation is not the basis for the legal determination of the identity of the parties to a written contract.
The contracts do not identify the individual physicians as parties. The parties are identified as Anthem and the corporate entities. The individuals who signed for the groups identified themselves as signing on behalf of the corporations, not on behalf of a list of individual physicians. The plaintiffs cannot, by way of their agreements with the entities of which they are members, alter the terms of the agreements such that Anthem is in the position of contracting with each physician individually rather than with a group practice organized as a corporation. Each of the ten plaintiffs signed a Represented Provider Certification and Authorization that identified him as a "Represented Provider," that is, an employee of the group that signed the agreement, not as a principal or as an additional party to the agreement.
The structure and organization of the Participating Physician Group Agreement clearly indicates an intent to contract with a practice group, not with individuals in that group. In Section II, which is titled "Obligations of the Parties," the agreement provides that it is "[t]he CT Page 13142 Group, through its Represented Providers" that is to provide Covered Services. The group is required to perform services only through physicians who meet stated criteria. The agreement contemplates that addition of new physicians who enter into agreements not with Anthem but with the group to abide by the terms of the agreement. ("Represented Provider" means a licensed physician . . . who is employed by associated with or otherwise represented by the Group . . . (d) who has agreed with the Group to be subject to the requirements of this Agreement . . ." (Participating Provider Group Agreement, p. 2.) The agreement likewise contemplates that physicians may leave the group, but that the obligation to perform is a continuing obligation of the group. The certification signed by each physician states that he has "agreed with the Group," not with Anthem, to abide by the terms of the group's agreement with Anthem.
This court concludes that the wording of the contract defeats the claim that the individual physicians were parties as principals, and that the group was merely an agent.
Third Party Beneficiary
Alternatively, the ten plaintiff's claim that they have standing to enforce the agreements as third party beneficiaries.
The ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the intent of the parties to the contract was that the promissor should assume a direct obligation to the third party beneficiary; and that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. Grigerik v. Sharpe, 247 Conn. 293, 311-12 (1998); Micci v.Thomas, 55 Conn. App. 14, 16-17 (1999). "The intent of both parties, rather than just one of the parties to a contract, determines whether a third party is to be afforded third party beneficiary status under the contract." (Emphasis added.) Grigerik v. Sharpe, supra, [247 Conn.] 317.Micci v. Thomas, supra, 55 Conn. App. 17 (Emphasis in original.).
In Grigerik v. Sharpe, supra, the Supreme Court rejected the view that a third party's own expectations, or the intent of the contracting party with whom that third party was allied could confer third party beneficiary status:
 The law regarding the creation of contract rights in third parties in Connecticut is equally well settled. In Knapp v. New Haven Road Construction Co., 150 Conn. 321, 325, 189 A.2d 386 (1963), we quoted Colonial Discount Co. v. Avon Motors, Inc., 137 Conn. 196, CT Page 13143 201, 75 A.2d 507 (1950), and reaffirmed that "[t]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties . . . Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee.
Grigerik v. Sharpe, supra, 247 Conn. 312.
The cases cited above make clear that a direct, not an indirect or derivative, obligation must be undertaken by both parties, and that third party beneficiary status is not established merely by showing that one will receive some benefit from the contract or that one is affected by it.
The text of the Participating Physicians' Group Agreements does not support the plaintiffs position that Anthem intended to assume any direct obligation to them. Throughout the terms of that agreement, Anthem's obligations are explicitly obligations to the group entity, not to its members. The Participating Physicians' Group Agreements do not name the doctors who are to perform services, but merely specify that whomever the Group employs to fulfill its obligations must meet stated criteria. The section of the agreement titled "Obligations of the Parties" states no agreement by Anthem to pay individual doctors, but only the Group. (Agreement, IIA2.) Anthem agrees to communicate administrative policies and procedures not to individual doctors but only to the Group. (Agreement, IIA8.) Anthem agrees to maintain a system for "the Group" to obtain eligibility and coverage information (Agreement, IIC2) and to notify "the Group" of its utilization/quality procedures and appeal procedures (Agreement, IIF1, 3).
The plaintiffs assert that the statement that "Anthem BC BS, the Group and its Represented Providers shall act in accordance with the terms of this Agreement" (Agreement, IIA1) states a direct obligation of Anthem to the plaintiffs. This is a strained and unconvincing reading of the contract because all the terms that follow obligate Anthem to pay, CT Page 13144 communicate or provide notifications to the Group.
The court notes, however, that in one provision of the agreement (Agreement, IC1) Anthem agrees to "establish a system of Member identification to communicate to the Group and its Represented Providers the Member's Program and such other information as Anthem BC BS deems appropriate." This provision could be characterized as creating a direct obligation to Represented Providers. The plaintiffs allege at paragraph 20(h) that Anthem breached the agreement by "(h) failing to properly and adequately maintain a Member Identification System, such that the Plaintiffs, and other similarly situated physicians can obtain eligibility and general coverage information in timely fashion." Since the agreement on its face states a direct obligation to Represented Providers to provide a member identification system, the ten plaintiffs have standing to enforce this obligation.
The other issues the ten plaintiffs seek to raise are not, however, concerned with the obligation to communicate the Member's Program nor with any obligation that, by the terms of the contracts, Anthem undertook as a direct obligation to the ten plaintiffs. The provision concerning the member identification system is not an open sesame for enforcement of other terms as to which there is no indication of an intention by Anthem to provide a direct benefit to the ten plaintiffs.
This court finds that the undisputed facts material to the issue defeat the claim of third party beneficiary status with one exception identified above.
In summary, this court finds that the ten plaintiffs lack standing to assert the contractual claims set forth in the first and fourth counts of the revised complaint, with the exception of their claim of failure "to properly and adequately maintain a Member Identification System" as alleged at paragraph 20(h).
Tortious Interference with Business Expectations
Though the defendant seeks summary judgment as to all claims asserted by the ten plaintiffs listed above, it has briefed only their lack of standing with regard to the contract claims. Anthem has failed to brief its claim of entitlement to judgment on the claim of tortious interference and it has not presented affidavits or other materials demonstrating what the facts are and that it is entitled to judgment under those facts. It has not established entitlement to summary judgment as to this claim.
CUTPA
CT Page 13145
Anthem has not briefed its claim of entitlement to summary judgment on the ten plaintiffs' CUTPA claims. This court denied Anthem's motion to strike this claim in the original complaint. In the absence of an articulation of reasons for granting summary judgment as to this claim, and in the absence of a showing of what the undisputed material facts are with regard to it, the court denies the motion.
Conclusion
The motion for summary judgment on the first and fourth counts of the revised complaint is granted against Edward Collins, John J. O'Brien, Robert Biondino, Kevin Lynch, John Irving, Scott Gray, Ronald Ripps, Michael Marks, Kristaps J. Keggi and John M. Keggi except as to the claim, at paragraph 20(h), of breach of the obligation to provide a member identification system. The motion is denied as to that claim.
The motion for summary judgment on the third and fifth counts as to these ten plaintiffs is denied.
Beverly J. Hodgson Judge of the uperior Court